**FIRST NATIONAL ACCEPTANCE COMPANY, Appellant,**

**v.**

**Deola BISHOP, Appellee.**

**No. 13–04–135–CV.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

Feb. 9, 2006.

Richard A. Battaglia, Houston, for appellant.

David L. Rusnak, Atlanta, GA, Hervey Levin, Dallas, for appellees.

Before Chief Justice VALDEZ and Justices HINOJOSA and YANEZ.

## OPINION

Opinion by Chief Justice VALDEZ.

Appellant, First National Acceptance Company (FNAC), appeals from the judgment of the district court granting a declaratory judgment and permanent injunction in favor of appellee, Deola Bishop, and enjoining FNAC from conducting a foreclosure sale of certain property in Cameron County, Texas. FNAC argues that (1) the trial court erred in declaring that appellant does not possess holder-in-due-course status, (2) FNAC did not have an agency relationship with American Notice Investments, Inc. (ANI), and (3) Bishop should not have been granted attorneys' fees pursuant to the Declaratory Judgment Act. We affirm.

## Background

Bishop owned a home and property in Cameron County, Texas, which she sold to Cristobol and Juana Elisa Gonzalez in 1998 through a warranty deed with vendor's lien. The Gonzalezes executed a note in the principal amount of $76,500.00 payable to Bishop, accompanied by a deed of trust securing the property, and made regular payments to Bishop on the note.

Bishop held the note and deed of trust until January 2000, at which point she responded to an advertisement in a local newspaper soliciting the sale of promissory notes. The advertisement was placed by ANI, a corporation in the business of buying secured promissory notes from individuals on a discounted basis.

ANI's principal lender was FNAC, a Michigan corporation involved in lending money to businesses to facilitate the purchase of secured promissory notes, which FNAC itself would then repurchase and service. FNAC would also use ANI to conduct in-house closings of ANI's purchase of secured promissory notes with FNAC-funds. According to deposition testimony from ANI's owner, ANI would typically contact FNAC regarding potential promissory notes available for purchase. If FNAC approved the purchase of the note, it would release the funds to ANI with instructions regarding how to disburse the funds. ANI would then purchase the note from the individual holder and transfer its interest in the note to FNAC. FNAC would begin to service the note and collect payments directly from the individual debtors, although ANI would be notified if the note went into default. ANI was obligated to follow FNAC's instructions regarding the purchase of notes exactly. Neither ANI nor FNAC would disclose their relationship to individual note holders seeking to sell their notes to ANI.

When Bishop responded to ANI's newspaper advertisement, ANI allegedly sent FNAC information about the note and the property, including a broker worksheet and appraisal. After receiving approval, ANI sent FNAC the original note, the deed of trust, and note endorsement. FNAC responded with a "funding memo," by which ANI was instructed to conduct the closing for the Bishop property and then, once all FNAC's requirements were met, to disburse the sale funds to Bishop.

ANI failed to disburse any funds to Bishop. Bishop attempted to cancel her agreement and demanded the return of her documents. ANI failed to return the note, deed of trust, and note endorsement to Bishop, having already transferred these to FNAC. ANI then ceased doing business. FNAC also failed to disburse any funds to Bishop and refused to return the note, deed of trust, and note endorsement.

Shortly thereafter, FNAC's legal counsel notified the Gonzalezes that FNAC had purchased their note and deed of trust and was therefore entitled "to collect in full upon the Note, even if Bishop was not paid by [ANI] for her assignment based on the assignment executed by Bishop. Bishop assumed the risk of non-payment when she assigned the Note and Deed without requiring simultaneous payment." FNAC then threatened to go forward with possible foreclosure proceedings against the Gonzalezes.

Bishop and the Gonzalezes filed suit against ANI and FNAC seeking declaratory relief and a permanent injunction enjoining FNAC from conducting a foreclosure sale on the property. The declaratory judgment action sought a judgment declaring that (1) Bishop is the lawful owner of the note secured by the deed of trust, (2) neither ANI nor FNAC have an

interest in the note due to a failure of consideration, and (3) the transfer of the lien from Bishop is null and void. Bishop also sought an award of courts costs and reasonable and necessary attorneys' fees. ANI settled its dispute before trial and did not appear.

After a hearing, the court ruled in favor of Bishop, declaring that "Bishop is the lawful owner of, and entitled to possession of" the note; "neither [ANI] or FNAC have an interest in the note and the Bishop sale documents;" and "the transfer of liens by [ANI] or FNAC are null and void." The court ordered FNAC to pay Bishop's attorneys' fees, and also ordered the Gonzalezes to pay to Bishop all mortgage payments owed on the note. FNAC filed its appeal to this Court.

### Agency

FNAC argues that because ANI and FNAC enjoyed independent contractual relationships, the court could not impute that an agency relationship existed between them sufficient to defeat FNAC's holder-in-due-course status for the Bishop note.[1] The trial court held as a conclusion of law that ANI "was the agent of FNAC for the closing of the Bishop Sales Agreement," and therefore "all knowledge of [ANI] regarding the closing of the Bishop Sales Agreement, as agent for FNAC ..., is imputed to FNAC ... [including] notice of the failure of [ANI] to pay the Consideration to Bishop." We review the trial court's conclusions of law de novo. *See Dominguez v. Castaneda,* 163 S.W.3d 318, 325 (Tex.App.-El Paso 2005, pet. denied).

The question of whether a principal-agent relationship exists under established facts is a question of law for the court. *Ross v. Tex. One P'ship,* 796 S.W.2d 206, 210 (Tex.App.-Dallas 1990, writ denied). An agent is one who consents to the control of another, the principal, where the principal manifests consent that the agent shall act for the principal. *See Royal Mortgage Corp. v. Montague,* 41 S.W.3d 721, 732 (Tex.App.-Fort Worth 2001, no pet). A principal-agent relationship is not presumed, and the party asserting the relationship has the burden of proving it. *Id.* The party claiming agency must prove the principal has both the right to assign the agent's task and the right to control the means and details by which the agent will accomplish the task. *Lyons v. Lindsey Morden Claims Mgmt., Inc.,* 985 S.W.2d 86, 90 (Tex.App.-El Paso 1998, no pet.). The principal's extent of control over the details of accomplishing the assigned task primarily distinguishes the status of agent from that of independent contractor. *Id.* The right of control is "the supreme test" in establishing an agency relationship. *See State Farm Mut. Auto. Ins. Co. v. Traver,* 980 S.W.2d 625, 628 (Tex.1998) (citing *Newspapers, Inc. v. Love,* 380 S.W.2d 582, 588, 590, 598 (Tex. 1964)).

An agent need not disclose his or her principal's identity in order to act on behalf of that principal. *Latch v. Gratty, Inc.,* 107 S.W.3d 543, 546 (Tex.2003). An agent may make a contract for an undisclosed principal in his own name, and the

---

**1.** FNAC separates this argument into two issues on appeal, i.e., (1) the trial court erred by refusing to declare FNAC a holder in due course, and (2) there was no imputed agency relationship between ANI and FNAC. Because a conclusion that there was an imputed agency relationship between ANI and FNAC would preclude FNAC from being considered a hold-

er in due course, due to the lack of consideration received by Bishop for her note, we combine these issues and consider them together. *See Polland & Cook v. Lehmann,* 832 S.W.2d 729, 738 (Tex.App.-Houston [1st Dist.] 1992, writ denied) (imputing knowledge of agent to principal).

latter may sue or be sued on the contract. *Id.* (citing *First Nat'l Bank of Wichita Falls v. Fite,* 131 Tex. 523, 115 S.W.2d 1105, 1109–10 (1938); Restatement (Second) of Agency § 186 cmt. c).

■ Having reviewed the arguments and authorities presented by both parties, as well as the documents and testimony regarding the relationship between ANI and FNAC in the context of the sale of the Bishop note, we agree with Bishop that the trial court was presented with sufficient evidence to conclude that ANI acted as an agent for its principal, FNAC, for the closing of the Bishop sale. Bishop met her burden of proof to establish that ANI, over an extended period of time, repeatedly closed sale agreements funded by FNAC, as an "inside" closing under strict written instructions from FNAC.[2] For these "inside" closings, ANI prepared the transaction documents and conducted the closing as the sole representative of FNAC. This "inside" closing of sales agreements by ANI for FNAC was outside of and apart from the specific and limited requirements and duties imposed by the ANI–FNAC loan agreement. FNAC accepted the benefit of the ANI-conducted "inside" closings, repeatedly referred to ANI as its "broker," and took possession of the note before funding the transaction. This demonstrates that FNAC had both the right to assign ANI's task and the right to control the means and details by which ANI accomplished the task of acquiring and purchasing promissory notes. *See Lyons,* 985 S.W.2d at 90. Accordingly, we conclude the trial court did not err by declaring ANI an agent of FNAC in the context of the Bishop note sale.

■ The protections bestowed on those who qualify for holder-in-due-course status are intended to safeguard innocent holders who acquire a note without prior knowledge of any problems or defenses. *See* Tex. Bus. & Com.Code Ann. § 3.302 (Vernon 2002); *Tex. State Bank v. Sharp,* 506 S.W.2d 761, 763 (Tex.Civ.App.-Austin 1974, writ ref'd n.r.e.). Thus, because FNAC knew that Bishop, once she was not paid, had cancelled the sale of her note and demanded its return from ANI, and because ANI was acting as an agent of FNAC in this sale, FNAC cannot be considered a holder in due course and thus exempt from Bishop's claims. *See Polland & Cook v. Lehmann,* 832 S.W.2d 729, 738 (Tex.App.-Houston [1st Dist.] 1992, writ denied) (imputing knowledge of agent to principal).

Bishop urges this Court to adopt the reasoning of the New Jersey Supreme Court, which held the following in *Unico v. Owen,* 50 N.J. 101, 232 A.2d 405, 410, 417 (1967):

> The basic philosophy of the holder in due course status is to encourage free negotiability of commercial paper by removing certain anxieties of one who takes the paper as an innocent purchaser knowing no reason why the paper is not as sound as its face would indicate. It would seem to follow, therefore, that the more the holder knows about the underlying transaction, and particularly *the more he controls or participates or becomes involved in it, the less he fits the role of a good faith purchaser for value;* the closer his relationship to the underlying agreement which is the source of the note, the less need there is for giving him the tension-free rights

2. According to testimony from the owner of ANI, an "inside" closing involves the closing of a sale of a negotiable instrument without the use of an independent escrow agent; instead, the purchaser who is being funded handles all escrow duties until the transaction is complete and the instrument is transferred to the funding party.

considered necessary in a fast-moving, credit-extending commercial world.

. . . .

[W]hen it appears from the totality of the arrangements between dealer and financier that the financier has had *a substantial voice in setting standards for the underlying transaction,* or has approved the standards established by the dealer, and has agreed to take all or a predetermined or substantial quantity of the negotiable paper which is backed by such standards, the financier should be considered a participant in the original transaction and therefore *not entitled to holder in due course status.*

*See id.* (emphasis added); *see also Citicorp of North Am. v. Lifestyle Communications Corp.,* 836 F.Supp. 644, 659 (S.D.Iowa 1993) (applying the *Unico* reasoning); *Block v. Ford Motor Credit Co.,* 286 A.2d 228, 233 (D.C.Cir.1972) (same). While we decline to generally adopt *Unico's* "close connectedness" doctrine, we nonetheless agree that the reasoning underlying the conclusion reached in *Unico* is also applicable to the circumstances here. FNAC indeed had a "substantial voice" in setting the standards for the ANI purchase of Bishop's note and should be considered an active and aware participant in that transaction, not entitled to holder-in-due-course status. *See Unico,* 232 A.2d at 417.

FNAC's first and second issues are overruled.

## Attorneys' Fees

By its third issue, FNAC argues that the trial court erred when it awarded Bishop $58,623.56 in attorneys' fees.

Section 37.009 of the civil practice and remedies code explicitly states that the trial judge may award reasonable and necessary attorneys' fees as are equitable and just for any proceeding brought under the Texas Uniform Declaratory Judgments Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 1997); *Bocquet v. Herring,* 972 S.W.2d 19, 20 (Tex. 1998). Thus, the award of attorneys' fees in a declaratory judgment action is entrusted to the discretion of the trial court. *See Bocquet,* 972 S.W.2d at 20. However, the declaratory judgments act imposes four limitations upon the court's discretion. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009; *Columbia Rio Grande Reg'l Hosp. v. Stover,* 17 S.W.3d 387, 397 (Tex. App.-Corpus Christi 2000, no pet.) (citing *Bocquet,* 972 S.W.2d at 21; *Welder v. Green,* 985 S.W.2d 170, 180 (Tex.App.-Corpus Christi 1998, pet. denied)). The attorneys' fees must be reasonable, necessary, equitable, and just. *Stover,* 17 S.W.3d at 397. Additionally, there must be supporting evidence in order to sustain a verdict of an award of attorneys' fees. *See Bocquet,* 972 S.W.2d at 20 (citing *Beaumont Bank v. Buller,* 806 S.W.2d 223, 226 (Tex. 1991)).[3]

In this case, because Bishop prevailed in her motion for declaratory judg-

3. Factors the trial court should consider when determining the reasonableness of attorneys' fees include (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Garcia v. Martinez,* 988 S.W.2d 219, 222 (Tex.1999).

ment, which we have affirmed, the trial court acted within its discretion in granting attorneys' fees. *See Bocquet*, 972 S.W.2d at 20. Bishop submitted three separate affidavits for fees; attorneys Hervey P. Levin, David L. Rusnak, and Gustavo Garza each submitted an affidavit detailing their respective claims for payment. The trial court's amended final judgment reflects that it "examined the file and the supporting affidavits of counsel for Bishop, took judicial notice of the usual and customary attorney fees, and determined reasonable and necessary attorney fees to be $58,623.56."

 FNAC attacks the amount of fees awarded, arguing specifically that the Levin affidavit, which attached billing invoices, lacked evidence of any fees or costs accruing beyond March 25, 2003. However, we note that the trial itself took place in May 2003, and primary counsel for Bishop at the trial was Levin; clearly, then, Levin undertook efforts on behalf of his client after March 25, 2003 and thus could have accrued fees beyond what had been invoiced by March. FNAC also complains that there is no evidence of what attorneys' fees would be considered "reasonable and necessary." However, "the court is free to take judicial notice of the usual and customary attorney's fees for the services provided." *Purvis Oil Corp. v. Hillin*, 890 S.W.2d 931, 939 (Tex.App.-El Paso 1994, no writ); *see also Holsworth v. Czeschin*, 632 S.W.2d 643, 645 (Tex.App.-Corpus Christi 1982, no writ) ("we may presume that the trial court, in support of its judgment, did take judicial notice of the usual and customary fees for the legal services performed by appellee's attorney").

We conclude that FNAC failed to provide any evidence demonstrating that the trial court abused its discretion by awarding attorneys' fees as requested by Bishop. *See Bocquet*, 972 S.W.2d at 20. We ac-

cordingly overrule FNAC's third issue on appeal.

## Conclusion

The judgment of the trial court is affirmed.