NO. 07-07-0147-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 30, 2008
_____

WOODROW NELSON & SON, INC., APPELLANT

V.

ED WRIGHT CATTLE COMPANY, INC., DARWIN MANNING
AND DARWIN MANNING CATTLE COMPANY, INC., APPELLEES
_____

FROM THE 242ND DISTRICT COURT OF CASTRO COUNTY;

NO. B8355-0502; HONORABLE ED SELF, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Woodrow Nelson & Son, Inc. (Nelson), appeals from the trial court's granting of a summary judgment in favor of appellees, Ed Wright Cattle Co., Inc. (Wright) and Darwin Manning and Darwin Manning Cattle Co., Inc. (Manning). We will affirm the trial court's judgment.

## Factual and Procedural Background

In January 2005, Nelson sold 280 head of cattle in two lots. The cattle in each lot were sold to Rob Bradley. The first lot was delivered on January 14, 2005, at which time Bradley delivered his check to Nelson in the amount of $114,421.30. The second lot of cattle was delivered to Bradley by Nelson on January 22, 2005, and again, Bradley delivered his check to Nelson in the amount of $115,464.43. At no time did Bradley represent to Nelson that he, Bradley, was acting on behalf of anyone other than himself. There is no dispute that the amount of either check is incorrect. Bradley subsequently passed away on January 23, 2005, before either check was deposited in the Nelson's bank account. When the checks were presented for payment both were refused as there were insufficient funds in Bradley's account to pay the checks. Ultimately, Nelson filed a suit to collect the amount of the checks. It is undisputed that Bradley or his estate was paid for the cattle.

Originally Nelson sued the estate of Robert Bradley and Ed Wright, individually, but subsequently took a non-suit against both. Nelson claims that the defendants are obligated to pay for the amount of the checks Bradley issued it under the theory that Bradley was the agent of Wright and Manning. After an adequate time for discovery, Wright and Manning filed both traditional and no evidence motions for summary judgment. See TEX. R. CIV. P. 166a(c) and 166a(i). At or near the same time, Nelson filed its motion for traditional summary judgment.

2

On August 11, 2006, the trial court granted the motions for summary judgment filed by Wright and Manning, both the traditional and no evidence motions. The order of the trial court recites that, because of its ruling on Wright and Manning's motions for summary judgment, it did not reach the merits of Nelson's motion for summary judgment. It is from this ruling that Nelson appeals. By one issue, Nelson claims that the trial court erred in determining there was no agency relationship existing between Bradley and Wright and Bradley and Manning because the summary judgment evidence raised a fact issue regarding agency.

Standard of Review

In reviewing a trial court's decision to grant a traditional motion for summary judgment we review the judgment of the trial court *de novo*. Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). In conducting this review we will take as true all evidence favorable to the nonmovant, and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. Id. To sustain the granting of a traditional summary judgment motion, we must find that the movant has met its burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997).

In a no evidence motion for summary judgment, the movant must set forth the elements of the adverse party's claim for which it is alleged there is no evidence. See TEX. R. CIV. P. 166a(i), Western Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005). The burden then shifts to nonmovant to show that there is more than a scintilla of probative

3

evidence to raise a genuine issue of material fact on the disputed issue. <u>Forbes Inc. v. Granada Biosciences, Inc.</u>, 124 S.W.3d 167, 172 (Tex. 2003). Less than a scintilla of evidence exists when the evidence is so weak as to create only a surmise or suspicion of the fact to be proved. <u>King Ranch, Inc. v. Chapman</u>, 118 S.W.3d 742, 751 (Tex. 2003). To raise a genuine issue of material fact, however, the evidence must exceed mere suspicion, for evidence so slight is to do nothing more than make any inference a guess, and as such, equate to no evidence. <u>Ford Motor Co. v. Ridgway</u>, 135 S.W.3d 598, 601 (Tex. 2004). Conversely, more than a scintilla of evidence exists if it would allow reasonable and fair-minded people to differ in their conclusions. <u>King Ranch</u>, 118 S.W.3d at 751. Our examination of the record is performed in the light most favorable to the nonmovant. <u>Forbes</u>, 124 S.W.3d at 172.

Analysis

All parties to this appeal agree that the decisive issue raised in the no evidence motions for summary judgment is the question of agency. Was Bradley acting as an agent for either Wright or Manning? If the latter, then the next question is was Manning acting as an agent for Wright? Regarding agency, Texas law does not presume agency, and the party alleging an agency relationship has the burden of proving the issue. <u>IRA Resources, Inc. v. Griego</u>, 221 S.W.3d 592, 597 (Tex. 2007). Agency is a consensual relationship and there must be a meeting of the minds to establish this relationship, although consent may be implied by words or conduct of the parties. See <u>Carr v. Hunt</u>, 651 S.W.2d 875, 879 (Tex.Civ.App.–Dallas 1983, writ ref'd n.r.e.). It is the right of the principal to control the details of accomplishing the assigned task that primarily distinguishes the agent from the

4

independent contractor.  First Nat'l Acceptance Co. v. Bishop, 187 S.W.3d 710, 714 (Tex.App.–Corpus Christi 2006, no pet.).  It is this right of control that is the supreme test for the existence of an agency relationship. Id.  Texas has adopted Section 14 K of the Restatement (Second) of Agency (1957).  Rufenacht v. Iowa Beef Processors, Inc., 492 F. Supp. 877, 881 (N. D. Tex. 1980) (citing American Employers Ins. Co. v. Kilgore, 412 S.W.2d 67,69 (Tex.Civ.App.–Amarillo 1967, writ ref'd n.r.e.)).  The comments portion of Section 14 K gives guidance about how to view the factors surrounding an allegation that one party has acted as an agent for another.  The factors to be analyzed are that the party: 1) is to receive a fixed price for the property, irrespective of the price paid by him; 2) acts in his own name and receives the title to the property which he thereafter is to transfer, and 3) has an independent business in buying and selling similar property.  Id.

According to Nelson, the following evidence was introduced as summary judgment evidence and raised more than a scintilla of evidence regarding the existence of an agency relationship as to both Wright and Manning vis-a-vis Bradley.[1]

> Over the years, Bradley sold in excess of $30 million in cattle for Wright.
>
> Eighty-five percent of Bradley's business was with Wright Co.
>
> Bradley was paid by commission.
>
> Wright gave permission to brokers to purchase cattle on a deal by deal basis.
>
> Wright described the type of cattle desired by breed and weight characteristics.

---

[1]Nelson's brief first directs us to the evidence of the agency relationship between Manning and Wright, however, this inquiry is premature as there must first be established an agency relationship between Bradley and Wright or Bradley and Manning.

> At the time of purchase, Wright took actual possession of the cattle. (The cattle were loaded on to trucks arranged by Wright.)

A review of the total record reveals that each of the factors that Nelson allegedly raises the issue of agency raises only a surmise or suspicion of agency and, even when viewed in the light most favorable to the nonmovant, is just as easily explained in the terms of an independent contractor. There is no evidence in this record that would indicate that any of these actions would not be taken by Bradley or any broker acting as an independent contractor. By way of example, Ed Wright's affidavit points out that the breed and weight characteristics are given to him by his customers and are not an attempt by his company to do anything except meet the requirements of his customers. Likewise, the act of arranging for shipment of the cattle at time of delivery is reflective of the fact that Wright does not hold cattle because his business is to fill orders for feedlots and other finishers. Therefore, he ships the cattle immediately. Nelson opines that this means Bradley never takes possession of the cattle, which according to Nelson's analysis, is indicative of the fact that he was operating as an agent. However, the analysis offered by Nelson is equally operative in the situation of an independent contractor as it is with an agent. The summary judgment evidence indicated that Wright already had the cattle sold to a feedyard. Further, Nelson knew that Bradley was acting as a broker only and would resell the cattle and that such an arrangement was standard in the industry. Nelson alleges that Bradley was paid on commission and that is definitely indicative of an agency type of relationship. The summary judgment evidence indicates that Manning and Bradley may have, at times, split commissions; however, on the occasion in question, there was no proof of splitting of

6

commissions. Indeed, the evidence indicated that a check for a specific purchase price for each lot of cattle was issued by Wright to Bradley, or his estate, as opposed to a commission check. In the final analysis, indulging all inferences in favor of Nelson still results in summary judgment evidence that is no more indicative of an agency relationship than that of an independent contractor relationship. Accordingly, we can say that this evidence does no more than raise a surmise or suspicion. A surmise or suspicion equates to no evidence. Ford Motor Co., 135 S.W.3d at 601. Because Nelson has failed to produce any evidence on the essential issue of agency between Bradley and Wright or Bradley and Manning, the trial court was correct in granting Wright and Manning's no evidence motions for summary judgment. Forbes Inc., 124 S.W.3d at 172.

When a nonmovant fails to produce more than a scintilla of evidence under the burden of a no evidence motion for summary judgment there is no need to further analyze the sufficiency of movant's proof on the traditional motion for summary judgment. Ford Motor Co., 135 S.W.3d at 600. Because of our holding above we need not address the additional issue of whether Manning was an agent of Wright.

## Conclusion

Having overruled Nelson's issue regarding whether an agency relationship existed between the parties, we affirm the trial court's judgment.

Mackey K. Hancock
Justice

7