Gordon Allen PRICE, Appellant,

v.

Eugene C. DIVITA, M.D. d/b/a Gene Divita, M.D., P.A., Appellee.

No. 01–05–00799–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 3, 2006.

Rehearing Overruled Sept. 26, 2006.

Michael M. Essmyer, Essmyer & Tritico, L.L.P., Houston, TX, for Appellant.

James Boston, James R. Boston & Associates, and Gary Sommer, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices TAFT and NUCHIA.

## OPINION

SHERRY RADACK, Chief Justice.

This is a medical malpractice action filed pursuant to the Medical Liability and Improvement Act, former TEX.REV.CIV. STAT. ANN. art. 4590i §§ 1.02–16.02, current version at TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.001–.507 (Vernon 2005),[1] and concluded by a no-evidence summary judgment[2] rendered in favor of the defendant psychiatrist, appellee, Eugene C. DiVita, M.D. d/b/a Gene DiVita, M.D., P.A. The first of Price's two points on appeal presents a broad challenge to the trial court's ruling. In the second point, Price contends he was denied due process because, in rendering summary judgment, the trial court necessarily disregarded the expert testimony that Price offered to defeat DiVita's no-evidence motion. We affirm.

## Background

Price is a former Texas attorney. When he sued DiVita in May 2003, Price was serving a six-year prison sentence for misappropriation of client funds.[3] In spring 2001, a psychologist who had been providing marital counseling for Price and his wife administered a diagnostic test to Price his wife's request. After determined that Price "had a high ADD test,"[4] the psychologist referred Price to DiVita for further evaluation and for possible ADD medication.

Price first consulted DiVita in March 2001. At the conclusion of his evaluation, DiVita determined, from his training and experience of about 40 years and the symptoms that Price presented, that Price had ADD. He prescribed a 10 milligram dose of Adderal® twice per day. DiVita also suggested that only a half dose be taken for the first week, to determine the effect of the medication. His testimony and treatment notes reflect Price's informed consent to the medication, as well as DiVita's cautions about possible side effects of the medication. The initial dose was followed by documented increases on April 9, 2001, to 20 milligrams twice a day, with possibly less later in the day, and on June 5, 2001, to a total of 45 milligrams per day, with 30 milligrams in the morning and 15 milligrams in the afternoon. The increases were made following sessions with DiVita in which Price reported progress and improvement, especially with con-

---

1. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(d), (e) (Act of May 30, 1977, 65th Leg., R.S., ch. 817, §§ 1.01–12.01, 1977 Tex. Gen. Laws 2039–53, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884) (repealing entirety of article 4590i) (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a), (b)(1)-(2) (Vernon 2005)); *see also Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 542 n. 2 (Tex.2004) (noting codification of former article 4590i and codification of House Bill 4 at TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.001–.507).

2. *See* TEX.R. CIV. P. 166a(i).

3. On April 14, 2003, the Supreme Court of Texas accepted the resignation, in lieu of discipline, of Gordon Allen Price, age 50, of Houston. 66 Tex. Bar J. 619 (July 2003). On February 3, 2002, Price pled guilty to a charge of misapplication of $1.3 million in fiduciary funds. A jury assessed his punishment at six years in prison and a $10,000 fine.

4. Attention Deficit Disorder.

centration. June 5, 2001 was Price's last formal session with DiVita. According to DiVita, the prescription given that day should have lasted for 60 days. DiVita's treatment notes reflect that Price did not return for treatment after the June 5, 2001 session, but that Price contacted the office, stating that he needed the medication, but was not able to come into the office. DiVita consented to write a prescription for the same 45–milligram dosage, but for a 30–day supply only. DiVita had no further appointments with Price and did not see him again until December 20, 2001, when he met with Price at a hospital at Price's wife's request.

By December 2001, Price had gambled away approximately $2,000,000. About $800,000 of this amount came from his personal funds; Price had stolen the remainder from his client-trust funds. On December 20, 2001, he drove to a police station, where he surrendered and confessed the thefts. On the previous evening, Price had ingested 20 to 25 Adderal® tablets in an attempt to induce a fatal heart attack.

Price's pleadings state that he consulted DiVita because of marital problems, but his summary judgment evidence acknowledges that the referral from the psychologist was for an evaluation for ADD medication. Price claimed that DiVita negligently diagnosed Price with ADD and negligently prescribed Adderal®, an amphetamine and psychostimulant, for treatment without adequately investigating suitability of the drug for Price or investigating Price's personal and family history. In addition, Price claimed that DiVita did not outline a treatment plan, did not apprise Price of the addictive potential of Adderal®, and did not monitor him properly. Price claimed that taking Adderal® caused him to become impulsive and "manic," to feel invincible, and to abuse alcohol, gamble compulsively, steal from his clients' funds to finance the gambling, take illegal drugs, including amphetamines, and consort with prostitutes. Price alleged that gambling casinos sent limousines for him and that the limousine drivers provided both drugs and prostitutes for the trips to Louisiana. Price explained that because the casinos were providing amphetamines, he was able to accumulate and save the Adderal® that DiVita prescribed. According to Price, his behavior arising from DaVita's negligence resulted in gambling losses, a six-year imprisonment for felony misapplication of fiduciary property (client funds disbursed for gambling and expenses), divorce from his wife, estrangement from his family, loss of reputation, and other actual and consequential damages.

Price identified two expert witness, both forensic psychiatrists, Seth Silverman, M.D., and Victor Scarano, M.D., J.D., chief of forensic pshychiatry at Baylor Medical Center. Scarano had testified on Price's behalf during the punishment phase of his criminal trail. After deposing these experts, DiVita filed a no-evidence motion for summary judgment that focused on the cause-in-fact component of the causation element of Price's claim. DiVita argued that no competent evidence existed to show that any act or omission by him was the proximate cause of Price's complaints. In addition, and related to the causation issue, DiVita challenged the existence of any evidence that his treatment of Price fell below the standard of care.

Price responded to DiVita's motion in part by disputing his challenges to the substantial factor component of proximate cause. Price's response incorporated several evidentiary exhibits, including medical records, Price's deposition testimony, the deposition testimony of DiVita, Scarano, and Silverman, as well as affidavits and

reports by Scarano and Silverman. DiVita twice filed formal objections to Price's evidentiary exhibits, but the trial court signed an order overruling all of DiVita's objections. After an exchange of replies and responses, the trial court rendered summary judgment in DiVita's favor. On DiVita's motion, the trial court modified this judgment by signing a judgment specifying that summary judgment had been rendered on no-evidence grounds.

### Rule 166a(i)—Standard of Review

After adequate time for discovery has passed, the party without the burden of proof at trial may move for summary judgment without presenting any evidence, by contending that no evidence supported an essential element of the opponent's claim or defense. *See* TEX.R. CIV. P. 166a(i). The movant must, as DiVita did here, specify the elements for which there is no evidence.[5] *See id.; Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 207 (Tex. 2002). The burden then shifted to Price to respond to DiVita's motion with probative summary judgment evidence that was sufficient to raise a genuine issue of material fact on the challenged causation element of Price's malpractice claim. *See* TEX.R. CIV. P. 166a(i); *Morgan v. Anthony,* 27 S.W.3d 928, 929 (Tex.2000) (citing *Flameout Design & Fabrication, Inc. v. Pennzoil Corp.,* 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.)). To meet his burden as nonmovant, Price had only to present more than a scintilla of evidence that raised a material issue of fact on the causation element of his malpractice claim. *See Little v. Tex. Dep't of Criminal Justice,* 148 S.W.3d 374, 379 (Tex.2004). More than a scintilla of evidence occurs if what is offered to defeat the no-evidence

motion would allow reasonable and fairminded people to differ in their conclusions; less than a scintilla occurs when what is offered in opposition to a no-evidence motion is so weak that it gives rise to mere surmise or suspicion. *Forbes, Inc. v. Granada Biosciences, Inc.,* 124 S.W.3d 167, 172 (Tex.2003). If Price did not produce more than a scintilla of evidence in opposition to raise an issue of material fact, the trial court had no choice but to grant DiVita's motion. *See* TEX.R. CIV. P. 166a(i) & cmt.; *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002); *Rueda v. Paschal,* 178 S.W.3d 107, 108 (Tex.App.-Houston [1st Dist.] 2005, no pet.).

On appeal, we review summary judgments de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). Our review is necessarily limited, however, to the grounds asserted in the motion, the response, and any evidence that accompanied the response. *See* TEX.R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *see also McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993) (stating that courts may not rely on parties' briefs or summary judgement evidence in "determining whether grounds are expressly presented"). We take all summary judgment evidence as true and review it in the light most favorable to the party against whom the no-evidence summary judgment was rendered. *Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 157 (Tex.2004); *see City of Keller v. Wilson,* 168 S.W.3d 802, 824 (Tex.2005) (noting standard). On reviewing the record in that light, if we conclude that the nonmov-

---

5. Price does not dispute that DiVita's rule 166a(i) motion for summary judgment satisfied this requirement or that adequate time for discovery had passed when DiVita filed his motion.

# 336

ant, Price, brought forward more than a scintilla of probative evidence that raised a genuine issue of material fact on the causation element of his medical malpractice claim, then we must hold that the no-evidence summary judgment was not proper and reverse. *See Forbes,* 124 S.W.3d at 172. When, as here, the trial court does not specify which of the no-evidence grounds proposed by DiVita's motion was dispositive, we may affirm on any ground offered by DiVita that has merit and was preserved for review. *See State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993) (Tex.R. Civ. P. 166a(c) motion); *Taylor v. Carley,* 158 S.W.3d 1, 8 (Tex.App.-Houston [14th Dist.] 2004, pet. denied) (Tex.R. Civ. P. 166a(i) motion).

## Discussion

### A. Elements of Medical Malpractice Claim

▪ To prevail at trial on his claim of medical malpractice, Price's burden would have been to establish a "reasonable medical probability" that DiVita's acts or omissions proximately caused Price's alleged injuries. *See Park Place Hosp. v. Estate of Milo,* 909 S.W.2d 508, 511 (Tex.1995); *Duff v. Yelin,* 751 S.W.2d 175, 176 (Tex. 1988). Meeting that burden requires proof of the following elements: (1) that DiVita had a duty to comply with a specific standard of care; (2) that DiVita breached that standard of care; (3) that Price was injured; and (4) that there was a causal connection between the breach of the standard of care and the injury. *See* former Tex.Rev.Civ. Stat. Ann. art. 4590i, § 1.03(a)(4), current version at Tex. Civ. Prac. & Rem.Code Ann. § 74.001(13) (Vernon 2005) (including a cause of action against a physician within definition of "health care liability claim"); *Day v. Harkins & Munoz,* 961 S.W.2d 278, 280 (Tex. App.-Houston [1st Dist.] 1997, no writ);

*see also IHS Cedars Treatment Ctr. v. Mason,* 143 S.W.3d 794, 798 (Tex.2004) (generally stating elements of negligence claim).

### B. "Cause in Fact" or "Substantial Factor" Test for Causation

▪ The causation element of a negligence claim comprises the two following components: the cause in fact, or "substantial factor," component and the foreseeability component. *IHS Cedars Treatment Ctr.,* 143 S.W.3d at 798; *Leitch v. Hornsby,* 935 S.W.2d 114, 118–19 (Tex. 1996); *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992). Foreseeability requires that a person of ordinary intelligence would have anticipated the danger caused by the negligent act or omission. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 478 (Tex.1995). Because both elements are required, a party who establishes only that an injury was foreseeable cannot prevail.

To defeat DiVita's motion for no-evidence summary judgment on the cause-in-fact component of causation, Price had to present more than a scintilla of evidence that (1) DiVita's acts or omissions were "a substantial factor" in bringing about Price's claimed injuries and that (2), without DiVita's act or omission, those injuries would not have occurred. *See IHS Cedars Treatment Ctr.,* 143 S.W.3d at 799 (citing *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 472 (Tex.1991)) (in turn quoting and adopting Restatement (Second) of Torts § 431 cmt. a (1965)); *Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 784 (Tex.2001); *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 775 (Tex.1995).

▪ Merely showing that Price's claimed injuries would not have occurred but for DiVita's alleged negligence is not sufficient. DiVita's alleged negligence must have been a substantial factor in

bringing about Price's claimed harm. *See IHS Cedars Treatment Ctr.*, 143 S.W.3d at 799 (citing *Lear Siegler*, 819 S.W.2d at 472); *see also Boys Clubs*, 907 S.W.2d at 477 (explaining that defendant's conduct may be too attenuated to constitute legal cause of alleged injury "even if the injury would not have happened but for the defendant's conduct") (citing *Union Pump Co.*, 898 S.W.2d at 776; *Lear Siegler*, 819 S.W.2d at 472). Accordingly, evidence that shows only that the defendant's alleged negligence did no more than furnish a condition that made the alleged injuries possible will not suffice to establish the substantial-factor, or cause-in-fact, component of proximate cause. *See IHS Cedars Treatment Ctr.*, 143 S.W.3d at 799 (citing *Boys Clubs*, 907 S.W.2d at 477; *Union Pump*, 898 S.W.2d at 776; *Lear Siegler*, 819 S.W.2d at 472).

■ Because proving the elements of a medical malpractice claim generally requires expert testimony, *Hood v. Phillips*, 554 S.W.2d 160, 165–66 (Tex.1977), that is premised on "reasonable medical probability," *Park Place Hosp.*, 909 S.W.2d at 511, opinion testimony that amounts to "mere conjecture, guess, or speculation" will not suffice. *IHS Cedars Treatment Ctr.*, 143 S.W.3d at 798–99. Expert opinion testimony that is conclusory or speculative does not tend to make the existence of a material fact " 'more or less probable.' " *Coastal Transp. Co. v. Crown Cent. Petroleum. Corp.*, 136 S.W.3d 227, 232 (Tex. 2004) (quoting Tex.R. Evid. 401). Conclusory or speculative expert opinion is neither relevant nor competent. *Coastal Transp. Co.*, 136 S.W.3d at 232. There is no need to go beyond the face of the record to test the reliability of expert testimony that is challenged, as here, as merely conclusory or speculative on its face. *Id.* at 233.

## C. No Evidence that Act or Omission by DiVita Was Substantial Factor

### 1. *Alleged Knowledge of Propensity*

■ Price's contentions on appeal, as in the trial court, are grounded in the premise that DiVita acknowledged that Price had abused controlled substances and should not have prescribed Adderal® for Price because of his "propensity," specifically, his addictive personality disorder, i.e., his tendency to drug addiction. Price bases this premise on the deposition testimony of both of his expert-psychiatrists. Silverman explained, for example, that a person with this disorder "would become addicted to the amphetamine very quickly." Price also relies on the Physician's Desk Reference (PDR), contending that it contraindicates Adderal® for a person with this disorder. Yet, the list of contraindications in the version of the PDR in the summary judgment record does not specify persons with "addictive personality disorder" and states, instead, "patients with a history of drug abuse."

The summary judgment record further demonstrates, however, that the psychiatrists' descriptions of Price as suffering from addictive personality disorder derive from examinations conducted on Price after he surrendered and confessed the thefts to police. The experts' opinions further derive from Price's having, by that time, disclosed his history of abuse of controlled, addictive substances. Although these experts' opinions presume that DiVita was aware of Price's history of abuse of addictive drugs, i.e., amphetamines, the summary judgment evidence does not establish that Price disclosed that history to DiVita, and, therefore, does not show that DiVita, too, had that same knowledge of his "propensity."

It is undisputed that Price had a very high score on the ADD diagnostic test administered by the psychologist who re-

ferred Price to DiVita. The psychologist administered the test on request, after Price's wife reported that the husband of an acquaintance had been diagnosed with ADD and was much improved by Adderal® therapy. ADD, and symptoms consistent with ADD, according to DiVita's deposition testimony and treatment notes, were Price's chief complaints in his first meeting with DiVita on March 26, 2001. DiVita's deposition testimony interpreting his treatment notes indicates that, based on his training and experience, he diagnosed Price with ADD. Although the summary judgment record indicates that the first of the many gambling trips that Price made in 2001 occurred on the day after his second session with DiVita, the summary judgment record further demonstrates that Price reported only continuing progress and improved ability to concentrate during his three follow-up sessions with DiVita.

In his deposition testimony, DiVita acknowledged that other psychostimulants and amphetamines are contraindications for Adderal®, which is classified as a psychostimulant and amphetamine. DiVita also acknowledged that taking Adderal® would result in "painful and destructive consequences" for Price "*if*" he was using amphetamines and other drugs. (Emphasis added.) As confirmed by DiVita's treatment notes, however, Price reported taking only an over-the-counter medication for his reported daily migraines and a prescription medication, not a psychostimulant, for a back injury. DiVita also acknowledged that Price disclosed experimenting with marihuana in his youth and an extensive, but prior, history of alcohol abuse, including a lengthy treatment and rehabilitation program for alcohol abuse that was followed by eight years of sobriety with only one relapse. DiVita's treatment notes and testimony unequivocally state, however, that the Adderal® he pre-

scribed was the only psychostimulant that Price was taking.

Because the psychiatrists' expert opinions condemning DiVita's prescribing Adderal® for Price presume that he, like they, also had knowledge of Price's propensity for addictive behavior consistent with controlled substance abuse, and because the summary judgment record does not demonstrate that DiVita had that knowledge, their opinions that he was negligent in prescribing Adderal® to Price amount to surmise, conjecture, or speculation. Accordingly, their expert opinions are no evidence of either the cause-in-fact or the foreseeability components of proximate cause and thus do not give rise to a triable issue of fact concerning proximate cause. *See IHS Cedars Treatment Ctr.,* 143 S.W.3d at 798–99; *Coastal Transp. Co.,* 136 S.W.3d at 232; *Forbes,* 124 S.W.3d at 172.

### 2. "Trigger Mechanism"

■■■ Price emphasizes that both psychiatrists were firmly convinced that DiVita's prescribing Adderal® was the critical factor—in short, the "but for" element—that began the addictive, risk-taking, impulsive, and self-destructive behavior that culminated in the injuries for which Price sought compensation. Silverman, in particular, described Adderal® as "the most likely cause" or "necessary factor" for Price's behavior. Scarano referred to Adderal® as "the trigger."

Yet, both experts reneged and ultimately declined to state, definitively, that DiVita's prescribing Adderal® was a substantial factor in producing Price's claimed injuries. Scarano would say only "to a reasonable degree of medical certainty" that "use of these drugs was *related to*" Price's conduct. (Emphasis added.) When asked directly in his deposition whether Price "would not have en-

gaged in theft and debauchery but for his use of Adderal®", Scarano replied, "I don't think I can say that." When asked why he could not, Scarano explained, "I'm claiming that the use of [Adderal®] was *related* to his conduct. I'm not saying that it could never have happened without [Adderal®]." (Emphasis added.) Similarly, in response to a question from Price's own counsel during his deposition, Silverman expressed hesitancy to state "that the Adderal® was a proximate cause of the deterioration of [Price's] behavior." Silverman would only state that Adderal® was "one of the causes of it." Finally, according to Scarano's deposition testimony, Price became amphetamine-dependent when he combined Adderal® with other drugs that he claimed the casinos provided.

■ "But for" causation will not be sufficient to substantiate the necessary substantial-factor component of proximate cause when evidence shows that the defendant's conduct is too attenuated from the claimed injury and did no more than furnish a condition that made those alleged injuries possible. *See IHS Cedars Treatment Ctr.*, 143 S.W.3d at 799 (citing *Boys Clubs*, 907 S.W.2d at 477; *Union Pump*, 898 S.W.2d at 776; *Lear Siegler*, 819 S.W.2d at 472). Scarano's and Silverman's opinion testimony, however, does not rise even to the level of but-for analysis. At most, the experts state that DiVita furnished a condition that initially made Price's later-claimed injuries possible.

Neither expert proceeds beyond stating that DiVita's prescribing Adderal® as "related" to his claimed injuries. Yet, neither provides guidance concerning whether pre-scribing Adderal® was significantly, or, more precisely, substantially related to Price's claimed injury, to the degree required to raise a fact issue for the substantial-factor element of proximate cause. By stating only that prescribing Adderal® was "related" to Price's claimed injuries, his experts stated only that prescribing Adderal® was "a factor" for those injuries. But proximate cause demands proof that DeVita's conduct was a *substantial* factor in the injuries Price claims. *See id.* His experts' testimony, therefore, amounts to mere speculation and thus does not give rise to more than a scintilla of evidence to raise a material issue of fact for substantial-factor analysis and is, therefore, no evidence.

We overrule Price's first issue.

### Due Process Challenge

■ In his second point, Price contends that, in rendering summary judgment DiVita's favor, the trial court effectively and necessarily refused to consider and evaluate his experts' opinion testimony.[6] The essence of this complaint is that the trial court erred by not conducting a hearing to determine the reliability of Price's experts' testimony. Conclusory or speculative opinion testimony does not tend to make the existence of a material fact "more or less probable" and is neither relevant nor competent. *Coastal Transp. Co.*, 136 S.W.3d at 232 (quoting Tex.R. Evid. 401). A trial court presented with purported evidence that is merely conclusory or speculative on its face need not go beyond the face of the record to test its reliability. *Coastal Transp. Co.*, 136 S.W.3d at 233.

---

**6.** DiVita asserts a related contention, in which he asserts that the trial court erred by overruling DiVita's objections to portions of the evidence on which Price relied in opposing DiVita's motion for no-evidence summary judgment. We decline to address this contention. DiVita has not perfected an appeal and has nothing to gain from an appeal, given that he prevailed in the trial court and has not been harmed. *See* Tex.R.App. P. 44.1.

We overrule Price's second point of error.

## Conclusion

We affirm the judgment of the trial court.