In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00020-CV


______________________________




BEULAH PACKWOOD, INDIVIDUALLY


AND AS REPRESENTATIVE FOR

SYDNEY PACKWOOD, DECEASED, Appellant


V.



TOUCHSTONE COMMUNITIES, INC., AND


CARE INN PROPERTIES, INC., Appellees



 


On Appeal from the 6th Judicial District Court


Fannin County, Texas


Trial Court No. 37213




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Beulah Packwood, individually and as representative for Sydney Packwood, deceased, (1)
appeals the granting of the summary judgment motion of Touchstone Communities, Inc., and Care
Inn Properties, Inc. (collectively Touchstone). While taking her husband, an Alzheimer's patient at
the Texas State Veterans Home managed by Touchstone, for a walk, Beulah, who was eighty-five
at the time of the accident, stepped off a sidewalk into a hole. Stumbling, Beulah then tripped over
a sprinkler head, causing her to fall. When Beulah fell, she fractured her hip. Because Sydney had
been holding Beulah's hand, Sydney fell as well, suffering a head injury. Beulah brought suit against
Touchstone. 

 To succeed in a premises liability case, a plaintiff must prove:

 (1) Actual or constructive knowledge of some condition on the premises by the
owner/operator;

 (2) That the condition posed an unreasonable risk of harm;

 (3) That the owner/operator did not exercise reasonable care to reduce or
eliminate the risk; and

 (4) That the owner/operator's failure to use such care proximately caused the
plaintiff's injuries.


Wal-Mart Stores v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998); Pierce v. Holiday, 155 S.W.3d 676,
679 (Tex. App.--Texarkana 2005, no pet.). In its motion for summary judgment, Touchstone argued
there was no evidence the conditions posed an unreasonable risk of harm or that it had actual or
constructive knowledge of the conditions.

 On appeal, the Packwoods argue there are genuine issues of material fact concerning the
danger posed by the sprinkler head and the hole and whether Touchstone had actual or constructive
knowledge of the dangerous conditions. In their third point of error, the Packwoods argue it is
uncontested that Touchstone did not remedy the dangerous conditions or warn the Packwoods of the
danger. Because the Packwoods failed to present any evidence that Touchstone had actual or
constructive knowledge concerning the hole and failed to present any evidence that the sprinkler
head posed an unreasonable risk of harm, we affirm.

Standard of Review

 Touchstone filed a motion for summary judgment claiming that there was no genuine issue
of material fact and that it was entitled to judgment as a matter of law. The motion also argued there
was no evidence of at least one of the elements of the Packwoods' cause of action. As such, the
motion was both a traditional summary judgment motion and a no-evidence summary judgment
motion. 

 We review de novo the trial court's decision to grant a motion for summary judgment. 
Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). "We review the evidence presented
by the motion and response in the light most favorable to the party against whom the summary
judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and
disregarding contrary evidence unless reasonable jurors could not." Mack Trucks, Inc. v. Tamez, 206
S.W.3d 572, 582 (Tex. 2006); see City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). 

 To prevail on a traditional motion for summary judgment, a movant must establish that there
is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of
law. Tex. R. Civ. P. 166a(c); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671 (Tex.
1979). Summary judgment for a defendant is proper when the defendant conclusively negates at
least one element of each of the plaintiff's theories of recovery or pleads or conclusively establishes
each element of an affirmative defense. Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex.
1997); see Wornick Co. v. Casas, 856 S.W.2d 732, 733 (Tex. 1993). 

 A no-evidence summary judgment is essentially a pretrial directed verdict. We therefore
apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply
in reviewing a directed verdict. Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W.3d 502, 506 (Tex.
2002). We must determine whether the nonmovant produced any evidence of probative force to
raise a fact issue on the material questions presented. Id.; Vial v. Gas Solutions, Ltd., 187 S.W.3d
220, 228 (Tex. App.--Texarkana 2006, no pet.). A no-evidence "motion for summary judgment
must be granted if: (1) the moving party asserts that there is no evidence of one or more specified
elements of a claim or defense on which the adverse party would have the burden of proof at trial;
and (2) the respondent produces no summary judgment evidence raising a genuine issue of material
fact on those elements." Sudan v. Sudan, 199 S.W.3d 291, 292 (Tex. 2006); see Tex. R. Civ. P.
166a(i). 

 A nonmovant will defeat a no-evidence summary judgment motion if the nonmovant presents
more than a scintilla of probative evidence on each element of his or her claim. D.R. Partners v.
Floyd, No. 06-07-00001-CV, 2007 Tex. App. LEXIS 5195 (Tex. App.--Texarkana July 5, 2007, pet.
denied); Price v. Divita, 224 S.W.3d 331, 336 (Tex. App.--Houston [1st Dist.] 2006, pet. denied). 
More than a scintilla of evidence exists when the evidence "rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions." Merrell Dow Pharms., Inc. v.
Havner, 953 S.W.2d 706, 711 (Tex. 1997). "Less than a scintilla of evidence exists when the
evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003) (quoting Kindred v. Con/Chem, Inc., 650
S.W.2d 61, 63 (Tex. 1983)). 

There Is No Evidence Touchstone Had Actual or Constructive Knowledge of the Hole

 The Packwoods argue there are genuine issues of material fact concerning whether the hole
was a dangerous condition and whether Touchstone had actual or constructive knowledge of the
hole. Under Texas law, a plaintiff can establish knowledge of a potentially harmful condition in one
of three ways: 

 (1) prove the defendant caused the harmful condition; (2) prove the defendant knew
of the harmful condition and negligently failed to remove it; or (3) prove the harmful
condition was present for so long that it should have been discovered or removed in
the exercise of reasonable care. 


Brookshire Food Stores, L.L.C. v. Allen, 93 S.W.3d 897, 900 (Tex. App.--Texarkana 2002, no pet.);
see Keetch v. Kroger Co., 845 S.W.2d 262, 265 (Tex. 1992). The Packwoods failed to present the
trial court with any evidence that Touchstone had actual or constructive knowledge of the hole.

 It is uncontested that Touchstone did not actively create the hole and there is no evidence
Touchstone had actual knowledge of the hole. The Packwoods argue that the hole was created by
nature and was present for so long it should have been discovered by Touchstone if Touchstone had
exercised reasonable care. Touchstone had a duty to perform reasonable inspections to find latent
defects. Adam Dante Corp. v. Sharpe, 483 S.W.2d 452, 455 (Tex. 1972); see Motel 6 G.P., Inc. v.
Lopez, 929 S.W.2d 1, 3 (Tex. 1996); Corbin v. Safeway Stores, Inc., 648 S.W.2d 292, 295 (Tex.
1983); Restatement (Second) of Torts § 343, cmt. b (1966). Beulah (2) testified she believed the
hole was created by winter rains and snow. Her testimony is less than a scintilla of evidence. Beulah
provides no explanation for how she reached this conclusion and does not testify she had observed
the hole before stepping into it. Beulah's testimony concerning how the hole was created is entirely
speculative and is no more than a mere surmise. There is no evidence the hole existed long enough
that Touchstone should have discovered the hole. See Brookshire Grocery Co. v. Taylor, 222
S.W.3d 406 (Tex. 2006). 

There Is No Evidence the Sprinkler Head Posed an Unreasonable Risk

 The Packwoods also argue the sprinkler head posed an unreasonably dangerous condition. 
"A condition is unreasonably dangerous if it presents an unreasonable risk of harm." Brinson Ford,
Inc. v. Alger, 228 S.W.3d 161, 163 (Tex. 2007); Seideneck v. Cal Bayreuther Assocs., 451 S.W.2d
752 (Tex. 1970). During her deposition, Beulah testified as follows:

 A. [Beulah] . . . [A]s we turned there, my foot went off the right side of the
sidewalk into the little ditch and the -- the water sprinkler was in the ditch right
beside the sidewalk and I stumbled when I raised my foot up, my foot hit the water
sprinkler --


 Q. [Counsel for Touchstone] Okay.


 A. [Beulah] -- and I went down. 


Beulah testified the sprinkler head kept her "from putting [her] foot back up on the sidewalk." Ron
White, the administrator of the nursing home, testified the sprinkler head should be within half an
inch of being flush with the ground. According to White, the sprinkler head was "maybe an inch,
inch and a half above the ground" after the accident. (3) The Packwoods contend White admitted that
a sprinkler head that is approximately an inch and a half above the ground would not be a safe
situation. 

 There is no more than a scintilla of evidence that the sprinkler head posed an unreasonable
risk. The Packwoods argue that White's testimony of the height of the sprinkler head after the
accident is some evidence of the height of the sprinkler head at the time of the accident. White
admitted a height of an inch and a half was not safe, but did not admit the sprinkler head was an inch
and a half above the ground before the accident. White testified he did not know what the height of
the sprinkler head was before the accident. Previously, White had testified he believed the hole "was
formed by [Beulah's] foot when she stepped off the sidewalk." White suggested the height of the
sprinkler head relative to the surrounding ground was affected by the accident. White testified as
follows:

 Q. [Counsel for the Packwoods] Would the position that it was in -- assuming
that it had not been pushed down, would one and a half inches be an appropriate
distance between the top of the sprinkler head and the ground?


 [Counsel for Touchstone]: Objection, form.


 Q. [Counsel for the Packwoods] -- been safe?


 A. [White] Assuming the -- no one stepped off the sidewalk and pushed the
ground around it, yes. It would not be a safe situation, no.


It is clear from the context of White's testimony that he was not testifying that the height of the
sprinkler head was an inch and a half before the accident. Further, the mere fact that Beulah tripped
is not sufficient to establish that the sprinkler head was an unreasonable risk. There is no evidence
the sprinkler head posed an unreasonable risk at the time of the accident. (4) The trial court did not err
in granting Touchstone's motion for summary judgment.

 For the reasons stated, we affirm the judgment of the trial court. 



 Jack Carter

 Justice


Date Submitted: July 23, 2007

Date Decided: October 5, 2007

1. When referring to the appellant as a whole, we will use "the Packwoods"; when referring
to Beulah or Sydney Packwood separately, we will use their first names throughout this opinion.
2. We note that Touchstone argues that Beulah's deposition is not competent evidence because
Touchstone "timely objected to some of Plaintiff's summary judgment proof." Touchstone, though,
did not secure a ruling on their objections. As such, any defect of form has been waived. While
Touchstone correctly notes defects of substance do not have to be preserved, Touchstone makes no
attempt to identify what portions of Beulah's deposition contain defects of substance. 
3. Robert Naylor, who was in charge of maintenance of the nursing home, testified the
sprinkler head was about half an inch above the ground level thirty minutes after the accident. 
4. We note Touchstone cites Taylor, 222 S.W.3d 406, for the proposition there is no evidence
of actual or constructive knowledge that the sprinkler head posed a dangerous condition. Touchstone
also briefly argues there is no evidence it did not exercise reasonable care and there is no evidence
of proximate cause. It is not necessary for us to decide these arguments.