**Opinion issued August 13, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00361-CV

————————————

**TOMBALL TEXAS HOSPITAL COMPANY, LLC D/B/A TOMBALL REGIONAL MEDICAL CENTER, Appellant**

**V.**

**LA NETA BOBINGER, Appellee**

———

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-31139**

———

## MEMORANDUM OPINION

In this interlocutory appeal,[1] Tomball Texas Hospital Company, LLC, doing

business as Tomball Regional Medical Center (the "Hospital"), appeals the trial

---

[1]     *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(9).

court's denial of its motion to dismiss the health-care liability claim[2] brought against it by La Neta Bobinger. The Hospital contends that the trial court erred in denying its motion to dismiss because Bobinger failed to serve an adequate expert report.[3]

We affirm.

## Background[4]

On May 11, 2015, Bobinger underwent a total arthroplasty of her left hip (hip replacement) at the Hospital. Her surgeon, Michael Blackwell, M.D., and radiologist, Voon Ping Liaw, M.D.,[5] reviewed post-operative x-rays and concluded that the hip showed "satisfactory alignment without fracture or loosening." During her two-day hospital stay following surgery, Bobinger received care from the Hospital's nurses and assistance from its physical therapists.

The supplemental report prepared by Bobinger's expert, Cecil Rene Arredondo, M.D., details "the involvement of [the Hospital's] physical therapists and nurses in the post-operative care provided to [Bobinger] beginning May 11, 2015 and continuing up to the time of her discharge on May 13, 2015." According

---

[2]     *See id.* § 74.001(a)(13).

[3]     *See id.* § 74.351(a).

[4]     Given the preliminary stage of the proceeding, this factual background is taken from the pleadings and expert reports. *See Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 456 n.5 (Tex. 2017). The parties likewise rely on these facts.

[5]     Drs. Blackwell and Liaw are not parties to this appeal.

to Bobinger's medical records, he reports, Bobinger was able to walk, but "exhibited a very unsteady gait"; she "could only tolerate little weight bearing"; she had "a lot of swelling in the left hip and thigh area"; and her "reported level of pain [was] out of proportion to the normal post-op physical therapy progression," despite the medications being administered. Dr. Arredondo's review of the records shows that

> [t]he therapist noted the PT impairment and limitations included gait, endurance, range of motion, and strength deficits, in addition to pain limiting her function. . . .
>
> The therapist also noted the patient saying, "I don't know why it is hurting so much," and "I don't know why the medicine is not helping." . . . .

The physical therapist's notes for the physical therapy session that took place the morning of Bobinger's discharge and her final assessment of Bobinger's condition, Dr. Arredondo noted, indicate that

> the patient had a pain rating of 8 at rest . . . [and] she had not met her short term goal of being able to go up and down one flight of stairs (she could only do 3 steps). . . .
>
> [T]he patient's pain was less than the day before but . . . the patient had not attempted further ambulation . . . . The patient was not able to increase her repetitions due to pain and ha[d] a lot of pain and swelling in her left hip thigh area.

On May 19, 2015, Bobinger was readmitted to the Hospital with a fracture of the proximal femur, and Blackwell performed a revision surgery and internal fixation of the fracture. Bobinger returned to the Hospital again on June 9, 2015, this time with a prosthetic-joint-and-hardware infection. She was then transferred to St.

3

Joseph Medical Center,[6] where she was diagnosed with a failed arthroplasty and a greater trochanteric femoral fracture. On June 14, 2015, a surgeon at St. Joseph performed a revision surgery on Bobinger's hip, reduced both fractures, and drained and debrided her hip wound.

Bobinger brought negligence claims against the Hospital, Dr. Blackwell, Dr. Liaw, and Houston Northwest Radiology Association. This interlocutory appeal concerns Bobinger's vicarious liability claim against the Hospital based on alleged omissions by its physical therapists and nurses.

As to the Hospital, Bobinger alleges that "through its agents and/or employees," while in the course of providing her with medical care and treatment, "fail[ed] to properly administer drugs to prevent infection"; "fail[ed] to properly evaluate [her] before discharge"; "fail[ed] to timely diagnose and monitor infection and misplacement of the prosthesis in [her] hip and leg"; improperly discharged her; and discharged her while she was in pain and had a "misaligned fractured hip and infection." She asserts that, as a proximate result of these negligent acts and omissions, she has suffered, and, in all reasonable medical probability, will continue to suffer, physical pain, mental anguish, physical impairment, and disfigurement. In addition, Bobinger alleges, she has incurred, and will continue to incur, medical expenses and loss of earnings.

---

[6] St. Joseph Medical Center is not a party.

Bobinger filed and served on the Hospital Dr. Arredondo's initial medical expert report. Dr. Arredondo, a board-certified orthopedic surgeon, stated:

> The management of [Bobinger] by Drs. Blackwell and Liaw as well as the therapy by Tomball's employees was below the standard of care and more likely than not the basis of the proximate cause of [Bobinger's] complicated post-operative course. The complications suffered would have been averted by a more diligent and timely diagnosis and management of the femoral fracture which was likely caused by the hip surgery. Had Mrs. Bobinger been properly diagnosed and treated she would not, within reasonable medical probability, suffered the orthopedic complications and the infection and would have recovered from the initial surgery without further problems. The complications could have been prevented.

The Hospital objected to Dr. Arredondo's report on various grounds, including its "fail[ure] to differentiate between physicians, nursing, and therapy care." In detailing this objection, the Hospital complained that Dr. Arredondo's report makes "blanket criticisms against physicians and hospital nursing staff, without specifically and separately identifying the standard of care applicable to each individual, the breaches of the standard of care by each individual, and how those breaches proximately caused [Bobinger's] alleged injuries." The trial court sustained the Hospital's objections and granted Bobinger an extension to file and serve an amended report.[7]

---

[7] *See* TEX. CIV. PRAC. & REM. CODE § 74.351(c).

5

Dr. Arredondo's supplemental report states that the standard of care applicable to a physical therapist providing inpatient therapy to a patient after hip-replacement surgery "is to report to the ordering orthopedist (Dr. Blackwell) prior to discharge, that the patient [is] experiencing significant post-operative pain with ambulation and stair climbing ([Bobinger] lived in a 2-story home)" and "significant swelling in the left hip area."

The supplemental report notes that the medical records document that the floor nurse "was also aware of the patient's significant pain with physical therapy even after administration of [pain medication]." The supplement recites that the standard of care applicable to "orthopedic floor nurses" is to inform the orthopedic surgeon of the patient's problems," such as a lack of progress in physical therapy and "significant out of proportion pain, if they are made aware of it, as they were in this case." The supplemental report declares that the standards of care "for both the physical therapist and orthopedic floor nurses in this case further require[] that each advocate to the orthopedic surgeon to re-evaluate the left hip prior to discharge." These duties are necessary, the report explains, because "[o]rthopedic surgeons rely on nurses and physical therapists to inform them of post-operative difficulties their patients are having." Dr. Arredondo opined that the physical therapist and the floor nurse breached their respective standards of care by failing to inform Dr. Blackwell,

before Bobinger's discharge, of the persistent pain in Bobinger's left hip and her inability to progress in physical therapy.

With respect to causation, Dr. Arredondo's supplemental report states:

[I]t is reasonable to accept that had Dr. Blackwell been informed on May 12 and 13 that his patient was experiencing considerable pain with standard inpatient physical therapy for postop hip replacement patients, could not meet her short term goal of stair climbing, and had significant swelling in the left hip, he would have likely ordered another set of x-rays (AP and lateral) of the left hip prior to the patient's discharge on May 13, 2015. Presumably, this x-ray series would have revealed the same femoral fracture that was shown on the first post-op x-ray from 2 days before[,] which presumably would have caused Dr. Blackwell to cancel the discharge and expeditiously take the patient back to surgery to address the fracture, as he did after the patient was readmitted on May 19, with surgery on May 20, 2015.

The failure of the [Hospital's] orthopedic floor nurses and physical therapists to inform Dr. Blackwell of the unexpected results from physical therapy due to high levels of pain, contributed to the inappropriate discharge of this patient and delay in receiving the additional surgical intervention she needed to address the fracture until she returned to the hospital on May 19, 2015. As this patient was scheduled to continue with physical therapy at home it is reasonable to expect that continued attempts at ambulation, stair stepping, toilet transfers, and heel/toe strikes would have caused [Bobinger] significant pain in the left hip. In fact, Dr. Blackwell['s] orthopedic consult from May 20, 2015 indicates he was aware that after her discharge [Bobinger] had called his clinic complaining of increasing pain and that he had referred [her] to the emergency room on two separate occasions.

The Hospital moved to dismiss Bobinger's claim against it on the ground that the expert reports failed to adequately address the applicable standards of care, breach, and causation. The trial court denied the Hospital's motion.

7

## Discussion

The Hospital contends that the trial court erred in denying its motion to dismiss Bobinger's vicarious liability claim based on the alleged negligence of its physical therapists and nursing staff because the expert reports do not adequately address the applicable standards of care, breach, and causation.

### A.     Standard of Review

We review a trial court's ruling on a motion to dismiss a health-care liability claim for an abuse of discretion. *See Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018); *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner and without reference to guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010).

Under this standard, we defer to the trial court's factual determinations if the record supports them. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015). A trial court does not abuse its discretion merely because it resolves a discretionary matter differently than the reviewing court would. *Harris Cty. Hosp. Dist. v. Garrett*, 232 S.W.3d 170, 176 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (explaining that reviewing court may not simply substitute its judgment for trial court's). On the other hand, we owe no deference to the trial court's conclusions as to what the law

is or how it applies to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Univ. of Tex. Med. Branch v. Railsback*, 259 S.W.3d 860, 863 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Accordingly, a trial court's failure to properly analyze the law or apply the law to the facts constitutes an abuse of discretion. *See Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011).

**B.      Motion to Dismiss Health-Care Liability Claim**

The Texas Medical Liability Act ("TMLA") requires a health-care liability claimant to timely serve on each party against whom a health-care liability claim is asserted a written expert report that complies with the statutory requirements. *Baty v. Futrell*, 543 S.W.3d 689, 692–93 (Tex. 2018); *see* TEX. CIV. PRAC. & REM. CODE § 74.351. This requirement serves as "a mechanism for dismissal of the claimant's suit in the event of an untimely or deficient report." *Abshire*, 563 S.W.3d at 223 (citing TEX. CIV. PRAC. & REM. CODE § 74.351(b)). Its purpose is to "identify frivolous claims and reduce the expense and time to dispose of any that are filed." *Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012); *see Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011) (explaining that the expert report requirement's purpose is "to deter frivolous claims, not to dispose of claims regardless of their merits").

An expert report must provide "a fair summary of the expert's opinions on the date it is written regarding applicable standards of care, the manner in which the care rendered by the physician or health-care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6). To pass muster, the report must represent a "good-faith effort to provide a fair summary of the expert's opinions" as to the elements of the standard of care, breach, and causation. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001). A report qualifies as a good-faith effort if it (1) informs the defendant of the specific conduct called into question and (2) provides a basis for the trial court to conclude that the claims have merit. *Baty*, 543 S.W.3d at 693–94.

Conversely, if the report (1) does not represent an objective good-faith effort to comply with the definition of an expert report, or (2) does not provide a sufficiently specific basis for the trial court to conclude that the claims have merit, the claim is subject to dismissal. If the defendant identifies either of these deficiencies in a motion to dismiss and, after a hearing and any applicable extension and chance to cure its deficiencies, the report still falls short of meeting the statutory requirements, the trial court must grant the motion, dismiss the plaintiff's claim with prejudice, and award the defendant its attorney's fees. *Cornejo v. Hilgers*, 446 S.W.3d 113, 123 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *see* TEX. CIV.

10

PRAC. & REM. CODE § 74.351(b), (c), (*l*); *Baty*, 543 S.W.3d at 692–94 (discussing "*Palacios*'s two-part mandate"); *Scoresby*, 346 S.W.3d at 556.

The trial court must rely exclusively on the information within the four corners of the report in determining whether it is adequate. *Cornejo*, 446 S.W.3d at 123 (citing *Wright*, 79 S.W.3d at 52). The four-corners requirement "precludes a court from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended." *Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.); *see Gray*, 189 S.W.3d at 859. Although the report need not marshal all the plaintiff's proof, it must explain the basis of the expert's statements sufficiently to link the expert's conclusions to the facts. *Wright*, 79 S.W.3d at 52.

## C. Analysis

The Hospital contends that Dr. Arredondo's reports do not show a meritorious claim against it because the reports erroneously impute to the nurses and physical therapists a duty to foresee and diagnose Bobinger's injuries, tasks that, by law, belong exclusively to physicians.

### 1. Standards of care

The Hospital argues that Dr. Arredondo's reports do not identify a standard of care applicable to physical therapists and nurses. It claims that the report's stated duty that the physical therapist and nurse "advocate against discharge" requires them

11

to make a medical diagnosis, a skill that Texas law expressly excludes from the practices of physical therapy and nursing. *See* TEX. OCC. CODE § 453.006(a) ("A person may not engage in diagnosing diseases or in practicing medicine as defined by law on the basis of a license issued under this chapter."); *id.* § 301.002(2) (defining "professional nursing" and declaring that "[t]he term does not include acts of medical diagnosis"). But Dr. Arredondo's reports need not be read so broadly.

The reports state that the standard of care applicable to a physical therapist providing inpatient physical therapy to a patient after hip-replacement surgery requires the therapist to inform the ordering orthopedist before the patient's discharge whether a patient has significant post-operative pain during standard physical therapy and "significant swelling in the left hip area." The standard of care applicable to "orthopedic floor nurses," according to Dr. Arredondo, likewise requires them to "inform the orthopedic surgeon of the patient's problems with significant out of proportion pain with physical therapy, if they are made aware of it, as they were in this case." Dr. Arredondo further declares that under the standards of care applicable to the physical therapist and the floor nurse, they also were required to urge the orthopedic surgeon to re-evaluate Bobinger's left hip before discharge.

Texas statute defines the practice of physical therapy as including measurement and testing of musculoskeletal and other bodily functions,

12

rehabilitative treatment concerned with restoring function. TEX. OCC. CODE § 453.005(b). Applicable regulation informs this definition. *See* 20 TEX. ADMIN. CODE § 321.1(8), (10) (defining "evaluation" as "A dynamic process in which the physical therapist makes clinical judgments based on data gathered" during a patient's screening and testing); *see also id.* § 321.1(15) ("Physical therapy practice includes the use of modalities, procedures, and tests to make evaluations."). Nurses are charged with observing, assessing, intervening, evaluating, rehabilitating, counseling, and caring for "a person who is ill, injured, infirm, or experiencing a change in normal health processes." TEX. OCC. CODE § 301.002(2)(A).

A physical therapist or nurse who observes that a patient has significant post-operative swelling, has not made normal progress during physical therapy, and shows an unusually high level of pain that strong pain medication does not seem to alleviate can conclude that the patient's doctor should re-evaluate the patient before discharge and advocate for that to happen while remaining within the scope of their permissible duties. We hold that the trial court acted within its discretion in concluding that the reports sufficiently identify applicable standards of care.

### 2. Breach

The Hospital claims that the breach identified in the reports—that being the physical therapists and nurses' failure to report Bobinger's pain and lack of progress in physical therapy—is conclusory and thus renders the reports inadequate.

13

According to the Hospital, the reports show that the physical therapists and nurses documented these issues in the medical records, showing that no such breach occurred. The Hospital further contends that, to the extent the reports identify a standard of care that requires oral communication to the physician, it is unsubstantiated.

We disagree. Texas nursing standards require both reporting and documenting of a patient's status, including signs and symptoms, as well as "contacts with other health-care team members concerning significant events regarding a client's status." *See* 22 TEX. ADMIN. CODE § 217.11(1)(D)(i), (vi). The duty to report frequently arises in time-sensitive situations. *See, e.g.*, *Col. Med. Ctr. of Arlington Subsidiary L.P. v. Shelby*, No. 05-17-01358-CV, 2018 WL 6187437, at *5 (Tex. App.—Dallas Nov. 27, 2018, no pet.) (failure to timely report significant change in patient's condition which ultimately required amputation of leg); *Fortner v. Hosp. of the Sw., LLP*, 399 S.W.3d 373, 384–85 (Tex. App.—Dallas 2013, no pet.) (upholding as sufficient report opining that delay in informing the doctors about the patient's visual changes following emergency heart surgery breached standards of care applicable to nurse and physical therapist).

### 3. Proximate cause

The Hospital next argues that Dr. Arredondo's expert reports fail to explain how the Hospital's alleged breaches proximately caused Bobinger's injuries.

14

Proximate cause has two components: cause-in-fact and foreseeability. *Zamarripa*, 526 S.W.3d at 460. An expert report must address proximate cause, foreseeability, and cause in fact, although it need not use those specific terms. *Id.*; *Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 515 (Tex. 2017). As long as it makes a "good faith effort to explain, factually, how proximate cause is going to be proven," it satisfies the statute's threshold requirement. *Zamarripa*, 526 S.W.3d at 460.

### a. Foreseeability

The Hospital contends that the expert reports fail to connect the Hospital's conduct to Bobinger's injuries. Specifically, the Hospital argues, it is impossible for nurses and physical therapists to foresee Bobinger's hip fracture because they are prevented by law from making medical diagnoses.

A health-care provider's breach is a foreseeable cause of the plaintiff's injury if a health-care provider of ordinary intelligence would have anticipated the danger caused by the negligent act or omission. *Curnel v. Houston Methodist Hosp.–Willowbrook*, 562 S.W.3d 553, 562 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (citing *Price v. Divita*, 224 S.W.3d 331, 336 (Tex. App.—Houston [1st Dist.] 2006, pet. denied)). "The foreseeability analysis requires looking at all the circumstances in existence at the time" of the breach. *Stanfield v. Neubaum*, 494 S.W.3d 90, 103 (Tex. 2016) (citing *Texas & P. Ry. Co. v. Bigham*, 38 S.W. 162, 164 (1896)

15

("[W]hether a reasonably prudent man, in view of all the facts, would have anticipated the result.")).

The Hospital asserts that, absent a statement that physical therapists and nurses of ordinary intelligence would have anticipated the danger of a latent femoral fracture or the dangers of any of the other "orthopedic complications and infection" that form the gravamen of Bobinger's claim, the report is fatally deficient.

The section of Dr. Arredondo's report pertinent to this issue provides:

> The failure of the [Hospital's] orthopedic floor nurses and physical therapists to inform Dr. Blackwell of the unexpected results from physical therapy due to high levels of pain, contributed to the inappropriate discharge of this patient and delay in receiving the additional surgical intervention she needed to address the fracture until she returned to the hospital on May 19, 2015. As this patient was scheduled to continue with physical therapy at home it is reasonable to expect that continued attempts at ambulation, stair stepping, toilet transfers, and heel/toe strikes would have caused [Bobinger] significant pain in the left hip.

Contrary to the Hospital's contention, the report does not link the physical therapist or the nurses to the delay in diagnosing Bobinger's femoral fracture, but to the inappropriate discharge with instructions to continue with the weight-bearing physical therapy at home, despite her decreasing ability to tolerate it. Severe pain is a compensable injury. *See, e.g.*, *Rupp v. Brown*, 31 S.W.3d 803, 808 (Tex. App.—Austin 2000, pet. denied) (reversing no-evidence summary judgment against plaintiff who endured stillbirth resulting from mismanaged complications,

16

concluding that damages claim was supported by some evidence, independent of loss of fetus, that she suffered "severe pain and personal injury due to carrying the deceased fetus for several days before being able to have it surgically removed"). The trial court did not abuse its discretion in concluding that the report adequately addressed the foreseeability component of proximate cause.

### b. Cause in fact

The Hospital argues that Dr. Arredondo's reports do not demonstrate that the alleged failure to report Bobinger's condition and advocate for re-evaluation before discharge was a substantial factor in causing her injuries. "For a negligent act or omission to have been a cause-in-fact of the harm, the act or omission must have been a substantial factor in bringing about the harm, and absent the act or omission— i.e., but for the act or omission—the harm would not have occurred." *Zamarripa*, 526 S.W.3d at 460. "[A] defendant's act or omission need not be the sole cause of an injury, as long as it is a substantial factor in bringing about the injury." *Bustamonte v. Ponte*, 529 S.W.3d 447, 457 (Tex. 2017).

Dr. Arredondo's reports explain that orthopedic surgeons rely on nurses and physical therapists to report their patient's post-operative difficulties and, in this case, a report of Bobinger's unusually high level of pain, difficulty with physical therapy, and swelling would have led the doctor to re-evaluate her condition before discharging her. As part of the re-evaluation, the doctor "would have likely ordered

another set of x-rays (AP and lateral) of the left hip prior to [her] discharge." With both views, the doctor would have been able to make a more accurate diagnosis of the "femoral fracture that was shown on the first post-op x-ray from 2 days before[,] which presumably would have caused Dr. Blackwell to cancel the discharge and expeditiously take the patient back to surgery to address the fracture, as he did after the patient was readmitted on May 19, with surgery on May 20, 2015." The report sufficiently describes how reporting would have prevented Bobinger's discharge with instructions to perform physical therapy that caused her unusually severe pain. The Hospital points out that the physician has the sole decision to discharge a patient, citing *Zamarripa*, 526 S.W.3d at 461. Unlike the report in *Zamarripa*, though, Dr. Arredondo's reports explain that orthopedic surgeons rely on nurses and physical therapists to report any post-operative difficulties their patients may have and that they would consider that information in evaluating whether a patient should be discharged. This explanation is sufficient to show that the physical therapist's and the nurse's failure to report was a substantial factor in bringing about Bobinger's improper discharge.

The Hospital also argues that the reports do not explain how the physical therapist's and the nurse's alleged failure to communicate information beyond what was already reported and documented in the medical records was a substantial factor in bringing about Bobinger's injuries. The lack of this explanation, however, does

not render the reports deficient. An expert report need not anticipate or rebut all possible defensive theories that may ultimately be presented to the trial court, particularly when discovery in the case may yield information that makes some potential theories untenable. *See Owens v. Handyside*, 478 S.W.3d 172, 187 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). The expert must simply provide some basis that the defendant health-care provider's act or omission proximately caused injury. *Id.* at 187–88; *see also Palacios*, 46 S.W.3d at 879 (explaining that "a plaintiff need not present evidence in the report as if it were actually litigating the merits . . . the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial").

We conclude that Dr. Arredondo's expert reports provide a basis for the trial court to have concluded that they represent an objective good faith effort to comply with the definition of expert report and that Bobinger's claims against the Hospital's physical therapists and nurses have merit. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(*l*), (r)(6). We therefore hold that the trial court did not abuse its discretion in denying the Hospital's motion to dismiss.

## Conclusion

We affirm the trial court's interlocutory order denying the Hospital's motion to dismiss.

Gordon Goodman
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Chief Justice Radack, dissenting