In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00005-CV

                                                ______________________________

 

 

                                         HARDING
COMPANY AND 

                      HARDING ENERGY PARTNERS, LLC, Appellants

 

                                                                V.

 

                       SENDERO RESOURCES, INC., ET AL., Appellees

 

 

                                                                                                  


 

 

                                       On Appeal from the 217th
Judicial District Court

                                                           Angelina County, Texas

                                                    Trial Court No. CV-41879-08-11

 

                                                                                                   

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                          Opinion by Justice Carter








                                                                   O P I N I O N

 

            This is an
appeal[1]
of a final summary judgment concerning contract and tort claims arising out of
an agreement between several companies to acquire oil and gas leases.  Harding Company[2]
contracted with Sendero Resources, Inc., to acquire oil and gas leases in a
region of East Texas including parts of Nacogdoches, Angelina, San Augustine,
Sabine, Jasper, and Newton Counties.  Ted
Walters is the president and sole shareholder of Sendero.  Walters is also the president and sole shareholder
of TWW Tyler, Inc., formerly Ted W. Walters & Associates, Inc.[3]  The last entity—Ted Walters and Associates,
L.P.[4]—is
a limited partnership, with Sendero as the general 

partner and Walters as a limited partner.  

            Milton
A. Surles, an independent consultant geologist, contacted Ted Walters with
plans for developing an area in Angelina County which the parties named the
“Star Prospect.”  Michael R. Boney, a
landman employed by Associates, L.P., conducted research on land titles and
existing wells in the area of interest. 
Surles prepared cross-sections of well logs, and Sendero entered into
some oil and gas leases.  Harding’s
representatives met with Walters, Surles, and Boney, and eventually Harding
decided to purchase the Star Prospect.  

             The parties prepared and signed an
agreement.  Walters e-mailed a sample
agreement to Harding.  The sample
agreement provided that Harding shall contract with “Associates, Inc.”[5]
for landman services and pay rates “as mutually agreed.”  The parties negotiated changes, and Harding
put the final draft on its letterhead, signed it, and e-mailed[6]
it to Sendero.  Walters, Surles, and
Boney signed the agreement.  The signed
agreement was returned to Harding on the letterhead of “Associates, L.P.”[7]  Section 5 of the agreement contained a
noncompete clause prohibiting Sendero, Surles, Boney, and “Walters”[8]
from competing against Harding for oil and gas leases in the area.  In 2007, Harding paid $15,000.00 to Sendero,
Surles, and Boney as the “initial consideration” provided for in the
agreement.  

            Either
Associates, L.P., or TWW Tyler began researching land titles and acquiring
leases for Harding.[9]  The new leases were nominally held by
Sendero—at Harding’s instruction to prevent competitors from discovering who
was actually acquiring the leases.  The
leases were to be assigned to Harding once a target acreage was met.  Harding argues TWW Tyler acquired sixty-eight
leases covering approximately 3,346[10]
mineral acres and Associates, L.P., invoiced Harding for a lease bonus consideration
of $761,797.42.  The parties then agreed
to expand the area of interest, and the agreement was amended to include
2,287,300 acres in Nacogdoches, Angelina, San Augustine, Sabine, Jasper, and
Newton Counties.  Harding obtained
142,905.539 mineral acres in the area of interest from Black Stone Mineral
Company, L.P., and Sugarberry Kirby, JV. 
Walters alleges 146,261.6208 acres were acquired by Harding and were
subject to the agreement.  In total,
Harding paid Associates, L.P., $2,169,850.23 for land and leasing
services.  

            In April
2008, Harding and Walters agreed Harding could have until August 15, 2008, to
make any payments due under the contract.[11]  In July 2008, Boney informed Harding that TWW
Tyler had been assisting Harding’s competitors—EOG Resources, Inc., and Devon
Energy, Inc.—in acquiring leases in the area of interest.[12]  When confronted, Walters replied,

You
made the allegation that TWWINC [Associates, Inc., TWW Tyler] violated the
non-compete provision of the Star Prospect Letter Agreement.  I do not remember signing that agreement on
behalf of TWWINC.  That agreement says
Harding will hire TWWINC to take leases in areas designated by Harding.  To my knowledge that is what occurred.  It never occurred to me TWWINC was to be
bound under the non-compete provision of the Star Prospect AMI, and there was
no way I could have afforded to have all those brokers stop working over such a
large area for anyone but Harding.

 

Harding stopped making payments
under the contract.  On September 17,
2008, Walters wrote a letter purporting to terminate the agreement for
nonpayment.  In his deposition, Walters
admitted that TWW Tyler or Associates, L.P., had done work for Devon Energy,
Inc., but denied that they had worked for EOG Resources, Inc.  Walters admitted later in the deposition that they
performed landman work for another company working for EOG Resources, Inc.  

            Sendero,
Surles, and Boney brought suit alleging Harding failed to perform under the
contract, and Harding brought suit against Sendero, TWW Tyler, Associates,
L.P., and Walters alleging breach of the noncompete clause of the contract and
numerous torts.  The two lawsuits were
consolidated in the trial court.  Harding
settled with Surles and Boney.[13]  Walters filed a motion for partial
traditional summary judgment[14]
and a motion for partial no-evidence summary judgment alleging Associates,
Inc., TWW Tyler, Associates, L.P., and Ted W. Walters, in his personal
capacity, were not parties to the written contract or its written
amendment.  The trial court granted both
of Walters’ motions and denied Harding’s motion.  Walters then filed a second motion for
partial no-evidence summary judgment[15]
alleging there was no evidence of fraudulent inducement, no evidence any party
breached a fiduciary duty owed to Harding, no evidence the statute of frauds
applies, and other additional grounds not relevant in this appeal.  The trial court granted Walters’ second
motion for partial no-evidence summary judgment, awarded Sendero $965,701.14 in
actual damages, plus prejudgment interest and attorney’s fees, and awarded
Associates, L.P., $680,245.22 in actual damages, plus prejudgment interest and
attorney’s fees.  

            Harding
raises six issues on appeal.  Harding
argues the trial court erred in concluding TWW Tyler and Associates, L.P., were
not parties to the contract and concluding Walters signed the contract only as president
of Sendero.  In the alternative, Harding
contends TWW Tyler and Associates, L.P., breached a fiduciary duty each entity
owed to Harding, which relieved Harding from any duty to perform.  Harding also argues the contract between
Harding and Sendero is unenforceable under the statute of frauds.  Last, Harding claims the trial court erred in
granting summary judgment because genuine issues of material fact exist
concerning whether Walters committed fraud. 
Walters[16] raises a
cross-issue claiming, if this Court reverses, Harding is bound by the trial
court’s unchallenged findings.

            We conclude
the trial court correctly held that Walters signed the contract only as an
officer of Sendero, but the trial court erred in granting a final summary
judgment.  A fact issue exists as to
whether TWW Tyler and Associates, L.P., acted as agents of Harding.  Harding presented some evidence TWW Tyler and
Associates, L.P., breached any such fiduciary duties to Harding.  We overrule Harding’s argument that the
contract is unenforceable under the statute of frauds; the statute of frauds
does not apply to this contract.  We
conclude the trial court also erred in granting summary judgment based on
Harding’s fraudulent inducement cause of action.  Last, we overrule Walters’
cross-issue—Harding will not be bound by the unchallenged findings.

I.          
TWW Tyler and Associates, L.P., Were Not Parties to the Contract

 

            Harding
argues TWW Tyler and Associates, L.P., were parties to the contract.  Walters responds that Ted W. Walters signed
the contract only on behalf of Sendero and that an oral contract existed
between Associates, L.P., and Harding. 
The agreement provides in pertinent part:

Sendero
Resources, Inc. (“Sendero”), Michael R. Boney (“Boney”), and Milton A. Surles,
Jr. (“Surles”) on one hand and Harding Company (“Harding”) on the other, hereto
enter into this certain Letter Agreement, dated January 17, 2007 (“Agreement”).
. . .

 

            .
. . . 

 

1. 
Harding shall contract with Ted W. Walters & Associates, Inc.
(“Walters”) for the purposes of acquiring Leases. . . .

S, B, & S and Walters will use
their best efforts to acquire Leases . . . .

            .
. . .

 

5.  S, B & S and Walters shall not compete
directly or indirectly against Harding for any oil and gas rights in the Star
AMI while this Agreement is in force and effect.  S, B & S and Walters will assist Harding
in acquiring oil and gas rights in the Star AMI without first obtaining Harding’s
written consent.  Harding has the
responsibility to determine the leasehold acreage to acquire in the Star AMI.

 

Walters signed the contract, which designated he was signing
as the president of Sendero.

 

            Harding
argues the fact that Walters’ signature reflects his corporate office is only
“descriptio personae” and does not limit the capacity in which the person can
be held liable.  Harding cites a number
of cases which have held a surety, who signed a personal guarantee of a debt of
the principal only in their official capacity, is still personally liable.[17]  In Material
Partnerships v. Ventura, the Fourteenth District held “a signature alone
will not create an ambiguity in otherwise clear guaranty language in the body
of an instrument” and concluded that “[i]n such case, the corporate office may
be construed a descriptio personae of the signator rather than indication of
the capacity in which he signs.”  102
S.W.3d at 259.  These cases, though, are
distinguishable from the current case. 
In these cases, the contract clearly contemplated personal
liability.  In this case, the contract
clearly contemplates an agreement with only the corporation.

            The plain
language of the agreement clearly indicates Walters signed the agreement only
as president of Sendero.  First, the
agreement states it is between Sendero, Boney, Surles, and Harding.  TWW Tyler and Associates, L.P., are omitted
from this list.  Although the agreement
later references former Associates, Inc., renamed TWW Tyler and defined as
“Walters” in the contract, on six occasions, Associates, Inc., is not included
in the list of parties to the agreement.[18]  Second, Walters signed the contract as “president”
under the heading “Sendero.”  While the
title only creates a presumption that Walters was acting in his corporate
capacity for Sendero, there is nothing in the agreement to rebut this
presumption.  We note Surles and Boney each
signed the agreement in their personal capacity.  However, the agreement did not contain a
blank for Ted W. Walters in his personal capacity and, also, did not contain a
blank for Associates, Inc.  Unlike the
cases cited by Harding, the contract treated the corporate entities separately
and does not clearly indicate Ted W. Walters is liable in his personal
capacity.  

            Harding
argues that the Court must find that TWW Tyler and Associates, L.P., are
parties to the contract because any other conclusion would render provisions of
the contract meaningless.  While the
general rule is that a contract should be interpreted so that none of its
provisions are meaningless, this rule is qualified with the phrase “if
possible.”  A general rule of contract
construction cannot be used to bind a party to a contract it did not sign.  “A person is not made a party to a contract
merely by being named and described in it or merely by the fact that such a
contract is referred to in a second instrument in a way to evidence that such
person is a party in another contract.”  Lawrence v. United States, 378 F.2d 452,
461 (5th Cir. 1967).  The case of Willis v. Donnelly, 199 S.W.3d 262, 273
(Tex. 2006), is similar to this case.  In
Willis, the contract named Willis in
his personal capacity, but Willis crossed out the signature block for his
personal capacity and then signed only in his corporate capacity.  Id.  The Texas Supreme Court held Willis signed
only in his corporate capacity.  Id. 
Because the contract named Willis in his personal capacity, the effect
of the Texas Supreme Court’s conclusion that Willis did not sign in his
personal capacity was to render provisions of that contract meaningless.  Thus, the general rule that a contract should
be interpreted so that none of its provisions are meaningless does not control
when a named party does not assent to a contract.

            Harding
argues that Walters, who had actual and apparent authority to bind all three
entities, drafted the original provisions and therefore should be held to have
bound all three corporations.  But,
merely being in a position to bind a corporation does not mean the person
actually bound the corporation.  “Where a
corporation enters into a contract, the officer’s signature on the contract,
with or without a designation as to his representative capacity, does not
render him personally liable under the contract.”  Redmon
v. Griffith, 202 S.W.3d 225, 239 (Tex. App.—Tyler 2006, pet. denied).  As discussed above, the plain language of the
contract indicates Walters signed in his corporate capacity as president of Sendero.

             Next, Harding argues, because Sendero
contracted with TWW Tyler and Associates, L.P., it is liable.  Harding cites Seagull Energy E&P, Inc.
v. Eland Energy, Inc., 207 S.W.3d
342, 346 (Tex. 2006), for the proposition that a party who assigns its contractual
rights and duties to a third party remains liable unless expressly or impliedly
released by the other party to the contract. 
Harding, though, has not presented any evidence that Sendero assigned
any rights and duties to TWW Tyler or Associates, L.P.  The contract states, “Harding shall contract
with Ted W. Walters & Associates, Inc. (Walters) for the purposes of
acquiring Leases.”  The only obligation
exclusive to Sendero in the contract was the obligation to hold title in its name
for Harding.  There is no evidence this
duty was assigned to TWW Tyler or Associates, L.P.  We conclude the trial court did not err in
concluding TWW Tyler and Associates, L.P., were not parties to the contract.[19]  

II.        Fiduciary
Duty

 

            Harding’s second
and third issues contend TWW Tyler and/or Associates, L.P., breached fiduciary
duties they owed to Harding.  Harding
alleges two methods for the existence of fiduciary duties:   the existence of an agency relationship and
a duty imposed by the code of ethics of the American Association of Petroleum
Landmen.  Harding claims TWW Tyler agreed
to act as its agent for the purposes of performing land title research and
leasing in the area of interest.  Harding
claims, because the landman code of ethics requires a duty of loyalty, etc., an
agency relationship existed as a matter of law.[20]  Walters responds that no fiduciary duty
existed and the trial court correctly refused to consider the landman code of
ethics, which was not competent summary judgment evidence.

            A.        Were
TWW Tyler and Associates, L.P., Harding’s Agents?

 

            Harding argues TWW
Tyler and Associates, L.P., owed it fiduciary duties, which were breached.  Harding first argues that the scope of this
agency relationship was defined by the agreement.[21]  Harding alternatively argues TWW Tyler and
Associates, L.P., “consented to act for Harding, and in fact did act under HC’s
complete and direct control as Harding’s exclusive agent for all land services
in the AMI.”  

            Although an
agency relationship cannot be presumed,[22]
an agency relationship may be implied from the conduct of the parties or from
the facts and circumstances surrounding the transaction in question.  See
CNOOC Se. Asia Ltd. v. Paladin Res.
(Sunda) Ltd., 222 S.W.3d 889, 899 (Tex. App.—Dallas 2007, pet. denied); Walker Ins. Servs. v. Bottle Rock Power Corp.,
108 S.W.3d 538, 550 (Tex. App.—Houston [14th Dist.] 2003, no pet.).  

            “An
agent is one who consents to the control of another, the principal, where the
principal manifests consent that the agent shall act for the principal.”  First
Nat’l Acceptance Co. v. Bishop, 187 S.W.3d 710, 714 (Tex. App.—Corpus
Christi 2006, no pet.).  This Court has
noted:

An essential element of the principal-agent
relationship is the alleged principal’s right to control the actions of the
alleged agent. . . . This right includes not only the right to assign tasks,
but also the right to dictate the means and details of the process by which an
agent will accomplish the task.

 

Townsend v. Univ. Hosp.-Univ. of Colo., 83 S.W.3d 913, 921 (Tex.
App.—Texarkana 2002, pet. denied) (citations omitted).  

            Although TWW
Tyler and Associates, L.P., were not parties to the above-mentioned contract,[23]
some evidence indicates they were operating under the control and direction of
Harding and for the benefit of Harding. 
It is uncontested that TWW Tyler and Associates, L.P., acquired leases
in the area specified by Harding, in the manner specified by Harding, and for
the benefit of Harding.  Harding paid
Associates, L.P., $2,169,850.23 for lease bonuses to obtain the leases and for
land and leasing services.  In this
summary judgment proceeding, the facts were not fully developed, but the
evidence presented indicates a fact question exists as to whether Harding
exercised the requisite control in assigning tasks and dictating the means and
details by which TWW Tyler and Associates, L.P., would accomplish the task.[24]

            Walters does
not specifically deny the existence of an agency relationship with Harding, but
argues there is no evidence the relationship existed “before and apart from”
the business relationship in dispute. 
The requirement that a special relationship of trust exist prior to and
apart from a contractual agreement is a requirement unique to informal
fiduciary relationships.  The Texas
Supreme Court has noted, “[t]o impose an informal fiduciary duty in a business
transaction, the special relationship of trust and confidence must exist prior
to, and apart from, the agreement made the basis of the suit.”  Meyer
v. Cathey, 167 S.W.3d 327, 331 (Tex. 2005) (quoting Associated Indem. Corp. v.
Cat Contracting Corp., 964 S.W.2d 276, 288 (Tex. 1998)).  The fiduciary relationship in question is a
formal fiduciary relationship, not an informal fiduciary relationship.  An agency relationship creates, as a matter
of law, a fiduciary relationship.  See Johnson
v. Brewer & Pritchard, P.C.,
73 S.W.3d 193, 200 (Tex. 2002).  A fiduciary relationship alleged in this
case would be created by an agency relationship, not by a special informal
relationship of trust and confidence that had previously existed.  Harding was not required to introduce
evidence of a special relationship of trust before and apart from the business
relationship.

            Walter
cites National Plan Administrators, Inc.
v. National Health Insurance Co., 235 S.W.3d 695, 700 (Tex. 2007), in
support of its argument that no fiduciary relationship existed.  National
Plan Administrators, though, is factually distinguishable from the current
case.  National Plan Administrators concerned a case where the agency
relationship was explicitly created by a contract and the contract limited the
scope of the agency relationship.  Id.  The parties agreed the alleged agent “shall
act as an independent contractor in the performance of responsibilities formed
under this Agreement, and that [NPA’s] services are not exclusive to National
Health and that [NPA] will provide services to third parties.”  Id.  Although noting a special agency may have
existed, the Texas Supreme Court concluded a general agency did not exist as a
matter of law based on the agreed contract terms.  Id.  In this case, the alleged agency relationship
is not defined and limited by a contract—if an agency relationship exists, it
is based upon the conduct of the parties. 


            Walters also
cites a number of cases for the proposition that Texas courts have repeatedly
rejected a fiduciary relationship exists between parties in similar
circumstances.[25]  None
of these cases, though, involve an agency relationship.  As such, these cases are distinguishable from
this case.  

            A fact issue
exists as to whether TWW Tyler and Associates, L.P., were acting as Harding’s
agents when they acquired leases on Harding’s behalf and in the manner
specified by Harding.  If, on remand, the
evidence sufficiently supports the finding of an agency relationship, then a
fiduciary duty necessarily will be imposed. 

            B.        Evidence of Breach of Fiduciary Duty by
TWW Tyler and Associates, L.P. 

 

            Due to the
special nature of the relationship, an agency relationship imposes certain
fiduciary duties on the parties.  See Johnson,
73 S.W.3d at 200.  These duties include the duty of loyalty.[26]  Mathews
v. Sun Oil Co., 425 S.W.2d 330, 337 (Tex. 1968); Hartford Cas. Ins. Co. v. Walker County Agency, Inc., 808 S.W.2d 681, 688 (Tex. App.—Corpus Christi 1991, no
writ).  The Texas Supreme Court has
recently reaffirmed, “Unless otherwise agreed, an agent is subject to a duty to
his principal to act solely for the benefit of the principal in all matters
connected with his agency.”  Nat’l Plan Adm’rs, Inc., 235 S.W.3d at 700 (quoting Johnson, 73 S.W.3d at 199); see
Restatement (Second) of Agency §
391 (LEXIS through 2011) (“Unless otherwise agreed, an agent is subject to a
duty to his principal not to act on behalf of an adverse party in a transaction
connected with his agency without the principal’s knowledge.”); Restatement (Second) of Agency § 387
(LEXIS through 2011) (“Unless otherwise agreed, an agent is subject to a duty
to his principal to act solely for the benefit of the principal in all matters
connected with his agency.”); see also
Restatement (Third) of Agency §
8.04 (LEXIS through 2011) (“Throughout the duration of an agency relationship,
an agent has a duty to refrain from competing with the principal and from
taking action on behalf of or otherwise assisting the principal’s
competitors.”).  

            Assuming that an
agency relationship existed, the record contains some evidence that TWW Tyler
and Associates, L.P., violated their alleged duty of loyalty to Harding.  Walters admitted TWW Tyler or Associates,
L.P., had acquired leases for Devon Energy, Inc., in the area of mutual
interest and performed work for another landman company who was working for EOG
Resources, Inc.  The record established
Devon Energy, Inc., and EOG Resources, Inc., are competitors of Harding.  The trial court erred in granting a no-evidence
summary judgment on Harding’s breach of fiduciary duty claims.

            C.        Harding
Is Not Excused from Performing the Contract

 

            We
note Harding argues that the breach of fiduciary duty by TWW Tyler and
Associates, L.P., excused Harding’s failure to perform the contract.  Harding alleges (1) Sendero is liable because
Ted W. Walters owned all three entities; (2) Sendero assisted TWW Tyler and
Associates, L.P.; and (3) TWW Tyler and Associates, L.P., were Sendero’s agents
and, therefore, Sendero’s failure to control their behavior was a breach of the
noncompete clause.  

            Since we have found
Walters was not a party to the written contract, Walters’ fiduciary duty is
imposed only if an agency relationship existed between the parties, not on the
written contract.  

Harding has not
provided this Court with any legal authority or legal theory for why common
ownership permits this Court to disregard the corporate entities.  Although Harding pled that the corporate veil
should be pierced, the trial court did not disregard the corporate entities and
Harding does not complain about this failure on appeal.  Harding has not provided this Court with any
authority that a breach of fiduciary duty by one distinct legal entity can
excuse a party’s failure to perform its obligations under a contract to a
different distinct legal entity.[27]  

            Harding
additionally argues that Sendero assisted TWW Tyler and Associates, L.P., in
breaching their fiduciary duties to Harding and, therefore, Sendero violated
the noncompete clause of the contract. 
Harding cites Kinzbach Tool Co. v.
Corbett-Wallace Corp. for the proposition that a third party who knowingly
assists in the breach of fiduciary duty is a joint tortfeasor and liable for
said breach.  160 S.W.2d 509, 511 (Tex.
1942).  Harding, though, has not directed
this Court to evidence in the record that Sendero assisted TWW Tyler or
Associates, L.P.  The mere fact that all
three entities are owned by the same person is not evidence that Sendero
assisted TWW Tyler or Associates, L.P.  

            Finally,
Harding argues that TWW Tyler and Associates, L.P., acted as Sendero’s
agents.  Because these entities were
Sendero’s agents and acted under Sendero’s control, Harding argues Sendero
violated the noncompete clause.  The
record does not contain any evidence of an agreement for TWW Tyler or
Associates, L.P., to act as Sendero’s agent—either explicit or implied.  There is no evidence that Sendero assigned
any of its duties under the contract to either entity.  Further, the record does not contain any
evidence that Sendero had any right to control the activities of TWW Tyler or
Associates, L.P.  The evidence
establishes TWW Tyler and Associates, L.P., acted for the benefit of
Harding—not for the benefit of Sendero—and under terms specified by Harding—not
under terms specified by Sendero.  An
agency relationship will not be presumed and there is no evidence TWW Tyler and
Associates, L.P., were Sendero’s agents. 
We overrule Harding’s argument that the alleged breach of fiduciary duty
by TWW Tyler and Associates, L.P., excused Harding’s failure to perform
contractual duties owed to Sendero.

III.       Harding Cannot Raise the Statute of
Frauds Defense

 

            In its
fourth issue, Harding argues the statute of frauds bars enforcement[28]
of the contract because the writing contains an inadequate property description[29]
of the real property.[30]  Sendero responds that the statute of frauds
does not apply to joint acquisitions of land, citing Ganim v. Alattar, No. 10-0592, 2011 Tex. LEXIS 454 (Tex. June 24,
2011), reh’g granted (Tex. Jan. 20,
2012) (publication status pending).  It
is not necessary for us to decide whether the statute of frauds applies to
joint acquisitions of land.  Because
Harding accepted assignment of the mineral leases for which payment is being
sought, Harding is prevented from raising the statute of frauds as a
defense.  When a party accepts assignment
of mineral leases, the statute of frauds cannot be raised as a defense to
payment.  Eland Energy v. Rowden Oil & Gas, 914 S.W.2d 179, 186 (Tex.
App.—San Antonio 1995, pet. denied); Anderson
v. Eliot, 333 S.W.2d 654, 656 (Tex. Civ. App.—Eastland 1960, writ ref’d); Osborn v. Cone, 234 S.W.2d 88, 90 (Tex.
Civ. App.—Fort Worth 1950, no writ); see 41 Tex. Jur. 3d Frauds, Statute of § 117
(2007) (“After the delivery and acceptance of a conveyance in fulfillment for
the transfer of land, the statute of frauds has no application to the oral
promise of the transferee and the purchase money may be collected,
notwithstanding the absence of a promise in writing . . .”).  Harding has not contested that Sendero
assigned all of the mineral leases it acquired for Harding.[31]  Indeed, Harding prepared a spreadsheet
acknowledging the mineral leases acquired by Sendero and transferred to Harding,
as well as calculating the amount Harding owed Sendero for the work
performed.  Harding has acknowledged
delivery and acceptance of the mineral leases, and therefore, the statute of frauds
has no application.      

IV.       Evidence
of Fraudulent Inducement

 

            Harding
argues the trial court erred in finding there was no evidence of fraudulent
inducement.[32]  A fraudulent inducement claim requires a
party to establish the elements of fraud “as they relate to an agreement
between the parties.”  Haase v. Glazner, 62 S.W.3d 795, 798–99
(Tex. 2001).  The elements of fraud
are:   (1) the speaker made a material
representation that was false; (2) the speaker knew the representation was
false or made it recklessly as a positive assertion without any knowledge of
its truth; (3) the speaker intended to induce the other party to act upon the
representation; and (4) the other party actually and justifiably relied upon
the representation and thereby suffered injury. 
Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51
S.W.3d 573, 577 (Tex. 2001).  

            The
first issue is whether the speaker made a material representation that was
false.  Harding argues the noncompete
clause of the contract is a misrepresentation. 
As noted above, Walters drafted the original agreement and later said he
never intended TWW Tyler or Associates, L.P., to be bound by that agreement
even though the final agreement, which he signed for Sendero, clearly states
that “Walters” (identified as Ted W. Walters & Associates, Inc.) which was
renamed TWW Tyler, would not compete against Harding.  Walters argues, since TWW Tyler was not a
party, there was no misrepresentation. 
We disagree.  A false
representation must concern a “material fact as distinguished from a mere
matter of opinion, judgment, probability, or expectation.”  Hicks
v. Wright, 564 S.W.2d 785, 791 (Tex. Civ. App.—Tyler 1978, writ ref’d
n.r.e.).  The express misrepresentation
is that TWW Tyler would not compete, not that TWW Tyler was a party to the
contract.  Walters also argues this fact
was not material.  Harding presented
evidence that it would not have entered the agreement without the noncompete
clause and that it even attempted to obtain noncompete agreements from all
potential investors to whom Harding showed the prospect.  There is more than a scintilla of evidence
the representation was false and material. 


            Second,
there is more than a scintilla of evidence that Walters knew the allegation was
false or acted recklessly without any knowledge of its truth.  Walters argues he did not discover the fact
that the Agreement mistakenly referred to “Ted W. Walters & Associates,
Inc.,” until more than a year after the Agreement was signed.  The record, though, clearly establishes
Walters knew the contract mentioned one of his companies which did not sign the
contract.  The mistake concerned the name
of the company.  Walters stated in an
affidavit,

I
sent Harding a form of an agreement that had been originally drafted before the
creation of Associates, LP on December 22, 2005, and before Associates Inc.
changed its name to TWW Tyler, Inc. on December 22, 2005 . . . .  As a result this form mistakenly referred to
Associates Inc. instead of to Associates LP . . . .  I did not become aware of this mistake until sometime
in 2008.

 

The express representation was
that Associates, Inc. (TWW Tyler) would not compete against Harding for oil and
gas rights in the AMI.  Walters signed
the document containing this representation and later indicated he never
intended TWW Tyler to be bound by the noncompete clause.  There is more than a scintilla of evidence
Walters knew the allegation was false or acted recklessly as to the positive
assertion without any knowledge of its truth. 

            The next
issue is intent.  Fraudulent intent may
be established by either direct or circumstantial evidence.  Johnson
& Higgins of Tex., Inc. v.
Kenneco Energy, Inc., 962 S.W.2d
507, 526 (Tex. 1998); Formosa Plastics
Corp., USA v. Presidio Engr’s & Contractors, Inc., 960 S.W.2d 41, 47–48
(Tex. 1998).  “Intent is a fact question
uniquely within the realm of the trier of fact because it so depends upon the
credibility of the witnesses and the weight to be given to their
testimony.”  Spoljaric v. Percival Tours,
Inc., 708 S.W.2d 432, 434 (Tex. 1986). 
The circumstances of this case are sufficient to create a fact issue concerning
whether Walters had the requisite intent. 


            Harding
presented evidence of reliance and injury. 
Harding also presented evidence that it would not have entered the
agreement without the noncompete clause. 
A rational juror could infer from the circumstantial evidence that
Walters intended Harding to rely on the noncompete clause.  The fact that the original proposal did not
contain the noncompete agreement by Walters, but the final signed contract did
supports the assertion that such provision was a result of negotiation on which
Harding relied.  

            Walters
argues there was no evidence Harding suffered damages.  Harding presented more than a scintilla of
evidence that it entered into a contract it would not have agreed to absent the
misrepresentations.[33]  This is some evidence Harding suffered an
injury.  Further, Walters did not make
this argument in its second motion for a no-evidence partial summary judgment.[34]


            Harding
presented some evidence of each element of fraudulent inducement.  The trial court erred in granting the no-evidence
summary judgment.  

V.        Harding Is Not Bound by the Unchallenged
Findings

 

            Walters argues Harding
will be bound by the unchallenged findings of the trial court if we do reverse
the summary judgment.  The cases cited by
Walters do not support his argument.  In Spin Doctor Golf, Inc. v. Paymentech, L.P.,
the Dallas court stated, 

When
an appellant fails to brief one of the grounds for summary judgment, any error
is waived as to the granting of that ground for summary judgment.  Smith
v. Tilton, 3 S.W.3d 77, 83, 87 (Tex. App.—Dallas 1999, no pet.).  Accordingly, Spin Doctor has waived review of
summary judgment on its tort and forgery claims.

 

296 S.W.3d 354, 362 (Tex. App.—Dallas
2009, pet. denied).  In Heard v. Moore, this Court stated,

When
a party raises a contention as an issue on appeal, the party’s brief must
contain argument or authority to support it.  Tex.
R. App. P. 38.1(h).  In order to maintain a point on appeal, an
appellant must provide a discussion of the facts and authorities on which it
relies.  A failure to discuss relevant
facts and authority results in a waiver of the point on appeal.

 

101 S.W.3d 726, 730 (Tex. App.—Texarkana 2003, pet. denied).  Both cases merely hold the issues have been
waived “on appeal.”  Neither case says
the issues will be binding on remand.  We
further note the Texas Supreme Court has held, if a summary judgment is
reversed, the parties are not limited to the theories in the original summary
judgment at a later trial on the merits. 
Hudson v. Wakefield, 711
S.W.2d 628, 630–31 (Tex. 1986).  

            We
note the law of the case doctrine is similar to the argument being advanced by
Walters.  Under the law of the case
doctrine, a court of appeals is ordinarily bound by its initial decision if
there is a subsequent appeal in the same case.  Briscoe
v. Goodmark Corp., 102 S.W.3d 714, 716 (Tex. 2003).  The law of the case doctrine provides as
follows:

The
“law of the case” doctrine is defined as that principle under which questions
of law decided on appeal to a court of last resort will govern the case
throughout its subsequent stages.  By
narrowing the issues in successive stages of the litigation, the law of the
case doctrine is intended to achieve uniformity of decision as well as judicial
economy and efficiency.  The doctrine is
based on public policy and is aimed at putting an end to litigation.

 

Id. (quoting Hudson, 711 S.W.2d at 630 (citations
omitted)).  The law of the case doctrine
only applies to claims fully litigated and determined in a prior interlocutory
appeal; it does not apply to claims that have not been fully litigated and
determined.  Id.  Thus, the unchallenged
findings are not binding on Harding under the law of the case doctrine.  

VI.       Conclusion

 

            We affirm
the judgment of the trial court in part, reverse the judgment of the trial
court in part, and remand to the trial court for further proceedings consistent
with this opinion.  

            We
affirm a partial summary judgment on Harding’s breach of contract claims
against TWW Tyler and Associates, L.P. 
Walters signed the contract only in his corporate capacity as president
of Sendero.  TWW Tyler and Associates,
L.P., did not expressly assent to the contract and were not parties to the
contract.  We also affirm a partial
summary judgment that the statute of frauds does not apply to the contract
between Harding and Sendero.  We affirm
the trial court’s holding on these two limited issues.[35]  

We reverse the
trial court’s order granting a final summary judgment.  Harding introduced more than a scintilla of
evidence concerning breach of fiduciary duty and fraudulent inducement.  We conclude that a fact issue exists as to
whether TWW Tyler and Associates, L.P., acted as Harding’s agents and thereby
owed Harding fiduciary duties, including the duty of loyalty.  Harding presented some evidence TWW Tyler and
Associates, L.P., breached any such fiduciary duties.  Harding also presented some evidence Walters
fraudulently induced Harding to sign the contract.  The trial court erred in granting a no-evidence
summary judgment on the breach of fiduciary duty and fraudulent inducement
claims.  Because one remedy for
fraudulent inducement is rescission of the contract,[36]
the trial court erred in granting summary judgment on the breach of contract
claims.

            We remand this case to
the trial court for further proceedings consistent with this opinion.

 

 

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          November
16, 2011

Date Decided:             January
26, 2012 











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Gov’t Code Ann.
§ 73.001 (West 2005).  We are unaware of
any conflict between precedent of the Twelfth Court of Appeals and that of this
Court on any relevant issue.  See Tex.
R. App. P. 41.3.

 





[2]In
September 2008, Harding Company assigned its leases to Harding Energy Partners,
LLC, subject to the Harding Sendero Agreement. 
Harding Energy Partners, LLC, is an affiliate of Harding Company and
assumed all of Harding Company’s obligations. 
We will refer to Harding Company and Harding Energy Partners, LLC, collectively,
as Harding.

 





[3]In
2005, Walters amended the articles of incorporation to change the name of Ted
W. Walters & Associates, Inc., to TWW Tyler, Inc.  When we distinguish this entity name from its
current name (TWW Tyler), we will refer to this entity as “Associates, Inc.”

 





[4]We
will refer to this entity as “Associates, L.P.”





[5]The
name had already been changed to TWW Tyler, Inc.    

 





[6]Texas
has adopted the Uniform Electronic Transactions Act (UETA).  See
Tex. Bus. & Com. Code Ann. § 322.001–.021 (West 2009).  

 





[7]Walters
alleges Associates, Inc., was renamed Associates, L.P., in their brief.  However, the record establishes Associates,
Inc., was renamed TWW Tyler, Inc., and Associates, L.P., was a new entity
created in 2005.  

 





[8]The
agreement defined “Walters” as Associates, Inc.

 





[9]Harding
alleges the work was performed by TWW Tyler and invoiced by Associates,
L.P.  Walter testified Associates, Inc.
(renamed TWW Tyler) performed the landmen services.  Elsewhere, Walters testified Associates, L.P.,
and TWW Tyler had merged for tax purposes and were actually the same
entity.  Linda Russell, an employee of
Associates, L.P., responsible for invoices, stated in her summary judgment
affidavit that all of the landmen services were performed by employees of
Associates, L.P., and all invoices for the landmen services were sent to
Harding from Associates, L.P.  

 





[10]Walters
argues Sendero assigned 520 acres already obtained to Harding and acquired
3,368.8133 acres.

  





[11]Harding
argues it was reorganizing after winding down a partnership with Exxon and
beginning a partnership with Chesapeake Energy Company.  Walters argues Harding ran out of money.  The parties have not directed us to record
cites.

 





[12]Prior
to the agreement, Walters had been doing work for Hunt Oil Company in the area
of interest and had Harding’s permission to continue this work.  





[13]The
record on appeal includes notice of the settlement with Surles.  Both sides concede a settlement was reached
with Boney as well.

 





[14]To
prevail on a traditional motion for summary judgment, a movant must establish
that there is no genuine issue as to any material fact and that the movant is
entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Fort Worth Osteopathic Hosp., Inc. v. Reese,
148 S.W.3d 94, 99 (Tex. 2004); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671 (Tex. 1979); Baubles & Beads v. Louis Vuitton, S.A.,
766 S.W.2d 377 (Tex. App.—Texarkana 1989, no writ).  The defendant must conclusively negate at
least one element of each of the plaintiff’s theories of recovery or plead and
conclusively establish each element of an affirmative defense.  Sci.
Spectrum v. Martinez, 941 S.W.2d 910, 912 (Tex. 1997).  Because the movant bears the burden of proof,
all conflicts in the evidence are disregarded, evidence favorable to the
nonmovant is taken as true, and all doubts as to the genuine issues of material
fact are resolved in favor of the nonmovant. 
Nixon v. Mr. Prop. Mgmt. Co.,
690 S.W.2d 546 (Tex. 1985); see Limestone
Prods. Distrib., Inc. v. McNamara, 71 S.W.3d 308, 311 (Tex. 2002); Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d
217, 223 (Tex. 1999).





[15]To
prevail on a no-evidence motion for summary judgment, the movant must first
allege there is no evidence of one or more specified elements of a claim or
defense on which the nonmovant would have the burden of proof at trial.  Sudan
v. Sudan, 199 S.W.3d 291, 292 (Tex. 2006); see Tex. R. Civ. P.
166a(i).  A nonmovant will defeat a
no-evidence summary judgment motion if the nonmovant presents more than a scintilla
of probative evidence on each element of his or her claim.  DR
Partners v. Floyd, 228 S.W.3d 493, 497 (Tex. App.—Texarkana 2007, pet.
denied); Price v. Divita, 224 S.W.3d
331, 336 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).  The final test for legal sufficiency must
always be whether the evidence at trial would enable reasonable and fair-minded
people to reach the verdict under review. 
City of Keller v. Wilson, 168
S.W.3d 802, 827 (Tex. 2005).  More than a
scintilla of evidence exists when the evidence “rises to a level that would
enable reasonable and fair-minded people to differ in their conclusions.”  Merrell
Dow Pharms. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).  “Less than a scintilla of evidence exists
when the evidence is ‘so weak as to do no more than create a mere surmise or
suspicion’ of a fact.”  King Ranch, Inc. v. Chapman, 118 S.W.3d
742, 751 (Tex. 2003) (quoting Kindred v.
Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)).





[16]Unless
otherwise specified, we will refer to the four Appellees—Sendero; TWW Tyler;
Associates, L.P.; and Ted Walters—collectively as Walters.





[17]Material P’Ships v. Ventura, 102 S.W.3d
252, 259 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); Gulf & Basco Co. v. Buchanan, 707
S.W.2d 655, 657 (Tex. App.—Houston [1st Dist.] 1986, writ ref’d n.r.e.); Am. Petrofina Co. v. Bryan, 519 S.W.2d
484, 487 (Tex. Civ. App.—El Paso 1975, no writ); Marx v. Luling Co-op., 43 S.W. 596 (Tex. Civ. App.—Houston 1897,
writ ref’d); see Owens v. William H. Banks Warehouses, Inc., 202 F.2d 689, 693 (5th
Cir. 1953).  Harding also cites Federal Deposit Insurance Corp. v. K-D
Leasing Co., 743 S.W.2d 774, 776 (Tex. App.—El Paso 1988, no writ), which
found the promissory note was not signed in the appellees’ personal capacities.





[18]The
agreement defines the term “Parties” as Surles, Boney, Sendero, and Harding.





[19]We
note Walters argues the parol evidence rule bars admission of certain pieces of
evidence concerning the contract.   Because we have found that TWW Tyler and
Associates, L.P., were not parties to the contract, it is not necessary to
decide this issue.  Harding argues, in
its third issue, that Sendero performed no acts under the contract and
therefore is not entitled to recover. 
Harding argues Sendero merely held title in its name, which is a
ministerial act and is not entitled to compensation.  Harding does not cite any authority for this
argument.  We are not aware of any
authority permitting us to rewrite the terms of a contract merely because one
party only performs ministerial acts. 
Harding also argues there was a failure of consideration.  We disagree. 
Sendero holding title in its name is sufficient consideration.

 





[20]Even
if the landman code of ethics was proper evidence, rules of professional
conduct do not define standards of civil liability.  See Joe
v. Two Thirty Nine J.V., 145 S.W.3d 150, 158 n.2 (Tex. 2004). 

 





[21]According
to Harding, because the contract required TWW Tyler and Associates, L.P., to
act for Harding and did act for Harding, an agency relationship existed.  As discussed above, we have concluded TWW
Tyler and Associates, L.P., were not parties to the contract.  Therefore, we reject this argument.

 





[22]IRA Res., Inc. v. Griego, 221 S.W.3d
592, 597 (Tex. 2007).





[23]We
are not implying some form of contractual relationship did not exist.  Walters testified a verbal contractual
relationship existed.  It is not
necessary for this Court to determine the exact nature of the contractual
relationship between the parties.

 





[24]We
note, if the facts are uncontroverted or otherwise established, the existence
of an agency relationship is a pure question of law.  See
First Nat’l Acceptance Co., 187 S.W.3d at 714; Ross v. Tex. One P’ship, 796 S.W.2d 206, 210 (Tex. App.—Dallas 1990),
writ denied, 806 S.W.2d 222 (Tex.
1991); Cain v. Tennessee-Louisiana Oil
Co., 382 S.W.2d 794, 798 (Tex.
Civ. App.—Tyler 1964), aff’d, 400
S.W.2d 318 (Tex. 1966).  These cases,
though, involve appeals following a trial. 
The facts in the above cases were fully developed.  This is an appeal from a summary judgment and
the facts are not fully developed.  While
many of the facts are undisputed, multiple conclusions could be inferred from
those facts.  Given that the facts are
not fully developed, we conclude the ordinary summary judgment standards should
apply.  See Painter v. Momentum
Energy Corp., 271 S.W.3d 388, 404 (Tex. App.—El Paso 2008, pet.
denied) (agency is generally question of fact); Stanford v. Dairy Queen Prods.,
623 S.W.2d 797, 800–01 (Tex. App.—Austin 1981, writ ref’d n.r.e.) (“The status
of agency is one of ultimate fact derived from underlying facts . . . .” ).





[25]See Willis, 199 S.W.3d at 277 (rejecting
argument that corporation acted as agent for its shareholders and rejecting
argument that fiduciary duty existed between shareholders based on relationship
of trust and confidence); Schlumberger
Tech. Corp. v. Swanson, 959 S.W.2d 171, 176 (Tex. 1997) (no evidence of
partnership or confidential relationship between parties); Anglo-Dutch Petroleum Int’l, Inc. v. Smith, 243 S.W.3d 776, 781
(Tex. App.—Houston [14th Dist.] 2007, pet. denied) (rejecting fiduciary duty
based on relationship of trust and confidence between parties to arms-length
contractual arrangement); Scott v.
Scruggs, 836 S.W.2d 278, 282 (Tex. App.—Texarkana 1992, writ denied)
(concluding no formal fiduciary relationship existed between cotenants and
rejecting argument that informal fiduciary relationship existed); Pickens v. Hope, 764 S.W.2d 256, 268
(Tex. App.—San Antonio 1988, writ denied) (nonparticipating mineral owner owed
duty of good faith and utmost fair dealing, not fiduciary duty); O’Shea v. Coronado Transmission Co., 656
S.W.2d 557, 563 (Tex. App.—Corpus Christi 1983 writ ref’d n.r.e.) (failed to
raise fact issue that dealings between parties have continued for such a period
of time that one party was justified in relying on other to act in his best
interest); Grimes v. Walsh & Watts,
Inc., 649 S.W.2d 724, 728 (Tex. App.—El Paso 1983, writ ref’d n.r.e.) (mere
assignment of oil and gas lease does not create fiduciary relationship and no
evidence one existed based on relationship of trust and confidence).  

 





[26]We
note that the Texas Supreme Court has held an employee does not owe his or her
employer an absolute duty of loyalty and that the duty of loyalty in this
context must be “tempered by society’s legitimate interest in encouraging
competition.”  Johnson, 73 S.W.3d at 201; see
Restatement (Third) of Agency §
8.04 (LEXIS through 2011) (During the duration of an agency relationship, “an
agent may take action, not otherwise wrongful, to prepare for competition
following termination of the agency relationship.”).  Walters does not argue a public policy exists
which tempers the duty of loyalty owed under the circumstances presented
here.  Walters limits its argument to
whether fiduciary duties existed. 
Further, as discussed below, the actions of TWW Tyler and Associates,
L.P., exceeded mere preparation for competition.





[27]We
note Harding’s arguments are extremely similar to the single business
enterprise theory.  Under this theory,
corporations which are not operated as separate entities, “but rather integrate
their resources to achieve a common business purpose,” are treated as the same
entity for liability purposes.  See Paramont Petroleum Corp. v. Taylor,
712 S.W.2d 534 (Tex. App.—Houston [14th Dist.] 1986, writ ref’d n.r.e).  The Texas Supreme Court has rejected the
single business enterprise theory.  SSP Partners v. Gladstrong Invs. Corp.,
275 S.W.3d 444, 456 (Tex. 2008).  





[28]The
statute of frauds merely renders such a contract voidable and unenforceable
against an objecting party.  Bass v. Bass, 790 S.W.2d 113, 117 (Tex.
App.—Fort Worth 1990, no writ).

 





[29]The
written contract relied on to satisfy the statute of frauds must be complete in
every material detail and must contain all the essentials of a contract so that
the agreement may be ascertained from the writings without resort to oral
testimony.  Cohen v. McCutchin, 565 S.W.2d 230, 232 (Tex. 1978); see Long Trusts v. Robert M. Griffin, 222
S.W.3d 412, 413 (Tex. 2006); Dixon v.
Amoco Prod. Co., 150 S.W.3d 191 (Tex. App.—Tyler 2004, pet. denied).

 





[30]The
Statute of Frauds applies to 

                .
. . .

 

(4) a contract for the sale of real estate;

 

                .
. . .

 

(7) a promise or agreement to pay a
commission for the sale or purchase of:

     
(A) an oil or gas mining lease;

     
(B) an oil or gas royalty;

     
(C) minerals; or

     
(D) a mineral interest; . . . .

 

Tex.
Bus. & Com. Code Ann. §
26.01(b) (West 2009).   In general,
because oil and gas interests are real property, “contracts for the transfer or
assignment of oil and gas interests are subject to the Statute of Frauds.”  Long
Trusts, 222 S.W.3d at 416; see Consol.
Gas & Equip. Co. v. Thompson, 405 S.W.2d 333, 336 (Tex. 1966).   

 





[31]
The assignments contained in the record contain a signature by a
representative of Harding acknowledging the transfer.

 





[32]Harding
also cites Tex. Bus. & Com. Code
Ann. § 27.01
(West 2009), for the proposition that Walters committed statutory real estate
fraud.  Harding does not otherwise brief
statutory real estate fraud.  Because we
concluded that fact issues exist concerning fraudulent inducement, it is not
necessary for us to address whether there is some evidence of statutory real
estate fraud.





[33]Harding
alleges the initial $15,000.00 payment it made under the contract establishes
damages.

 





[34]On
appeal, our review is limited to the grounds presented to the trial court in
the motion for summary judgment and response. 
Stephens v. City of Reno, 342
S.W.3d 249, 253 (Tex. App.—Texarkana 2011, no pet.).





[35]These
issues have been fully litigated and are binding under the law of the case
doctrine on remand.  We note, though,
that the law of the case doctrine only binds the parties concerning claims
fully litigated and decided in this opinion. 
The law of the case doctrine does not apply to issues which have not
been challenged in this appeal.  

 





[36]Italian Cowboy Partners, Ltd. v. Prudential
Ins. Co. of Am., 341 S.W.3d 323, 331 (Tex. 2011).